979 So.2d 1093 (2008)
The STATE of Florida, Appellant,
v.
Joel G. LEBRON, Appellee.
No. 3D06-1940.
District Court of Appeal of Florida, Third District.
April 9, 2008.
*1094 Bill McCollum, Attorney General, and Angel L. Fleming, Assistant Attorney General, for appellant.
Restani & McAllister, P.A. and Jeffrey H. Fink, Coral Gables, for appellee.
Before COPE, RAMIREZ, and SALTER, JJ.
COPE, J.
This is the State's appeal of an order suppressing statements made by Joel G. Lebron. The trial court suppressed the pre-Miranda[1] statement on the theory that one of the law enforcement officers asked a question which was the functional equivalent of interrogation, prior to the administration of Miranda warnings. The court suppressed the post-Miranda statement on the theory that the pre-Miranda question rendered the post-Miranda statement inadmissible. We affirm as to the pre-Miranda statement but reverse as to the post-Miranda statement.
Defendant-appellee Lebron is charged with multiple offenses in connection with the abduction and murder of Ana Maria Angel and the abduction and attempted murder of Nelson Portobanco. The defendant was located by law enforcement officers in Orlando between 1:00 and 2:00 a.m. on April 29, 2002. The defendant was transported to the Orlando headquarters of the Florida Department of Law Enforcement ("FDLE") prior to 2:40 a.m.
Upon arrival at the FDLE headquarters, the defendant was seated in the FDLE cafeteria with an FDLE agent. The agent was aware that no Miranda warnings had yet been administered. Other agents were looking for a tape recorder so that the defendant's interview could be recorded if the defendant agreed to speak with them.
The agent initially said nothing to the defendant. After several minutes, the defendant's demeanor changed and he began to cry. The agent said, "I hope you know what kind of trouble you are in." The defendant replied, "Yes, I know. I killed her." He said that he told her to get down on her knees and that the gun did not go off until the third time he pulled the trigger. After the defendant said this, the agent left the room to report this information to other agents because up until that moment, the law enforcement agencies had hoped that Ms. Angel was still alive. The defendant said nothing further at that time and was not asked any questions.
At 3:06 a.m. the officers had located a tape recorder and began administration of Miranda rights. The defendant signed the waiver form at 3:15 a.m. The defendant gave a detailed confession which included the abduction of both victims, the theft of the victims' jewelry, credit cards, bank cards, and property, the sexual assault and murder of Ms. Angel, and the attempted murder of Mr. Portobanco.
The first question to be considered is whether the trial court correctly suppressed the defendant's pre-Miranda statement. The defendant was in custody, so Miranda warnings were required to be given before any interrogation.
"[T]he term `interrogation' under Miranda refers not only to express questioning, *1095 but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." Id.[2]
We agree with the trial court that under the Innis decision, the agent's statement amounted to interrogation. The reference to "how much trouble you are in" is clearly a reference to the underlying crime which caused the defendant to be in custody, and invites a response about that crime. As no Miranda warnings had been administered, we affirm that part of the trial court's order which suppressed the pre-Miranda statement.
The next question is whether the defendant's post-Miranda statements should have been suppressed. The trial court ruled that suppression was required by the United States Supreme Court's decision in Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004).
The decision in Seibert must be read with caution because there is no majority opinion. There is a plurality opinion, written by Justice Souter, representing the views of four Justices. The fifth vote was supplied by Justice Kennedy, who concurred in the judgment.
"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, `the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. . . .'" Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). The narrowest grounds are found in the opinion of Justice Kennedy, concurring in the judgment. State v. Pitts, 936 So.2d 1111, 1136 (Fla. 2d DCA 2006).
We turn to the Seibert decision. In Seibert the police department followed an intentional procedure of question first, warn later. Under this procedure the officer would conduct a custodial interrogation without Miranda warnings until there was a confession. Seibert, 542 U.S. at 604, 124 S.Ct. 2601. Then the interrogating officer would administer Miranda warnings and question the suspect again, covering the same ground a second time. Id.
Seibert was taken to a police station and left in an interview room for fifteen to twenty minutes, after which she was questioned without Miranda warnings for thirty to forty minutes. Id. at 604-05, 124 S.Ct. 2601. After she confessed, Seibert was given a twenty minute coffee and cigarette break. Id. at 605, 124 S.Ct. 2601. The interrogating officer then turned on a tape recorder, administered Miranda warnings and confronted her with her earlier unwarned statements. Id. Seibert confirmed everything that she had stated in the unwarned interview. "The unwarned interrogation was conducted in the station house, and the questioning was systematic, exhaustive, and managed with psychological skill. When the police were finished there was little, if anything, of incriminating potential left unsaid." Id. at 616, 124 S.Ct. 2601.
*1096 The Supreme Court upheld the suppression of the confession. According to the plurality opinion, "Because this midstream recitation of warnings after . . . unwarned confession could not effectively comply with Miranda's constitutional requirement, we hold that a statement repeated after a warning in such circumstances is inadmissible." Id. at 604, 124 S.Ct. 2601.
The plurality opinion made clear that the opinion was aimed at stopping a growing police practice of question first, warn later. The plurality opinion explained:
The technique of interrogating in successive, unwarned and warned phases raises a new challenge to Miranda. Although we have no statistics on the frequency of this practice, it is not confined to Rolla, Missouri. An officer of that police department testified that the strategy of withholding Miranda warnings until after interrogating and drawing out a confession was promoted not only by his own department, but by a national police training organization and other departments in which he had worked. Consistently with the officer's testimony, the Police Law Institute, for example, instructs that "officers may conduct a two-stage interrogation. . . . At any point during the pre-Miranda interrogation, usually after arrestees have confessed, officers may then read the Miranda warnings and ask for a waiver. If the arrestees waive their Miranda rights, officers will be able to repeat any subsequent incriminating statements later in court." Police Law Institute, Illinois Police Law Manual 83 (Jan. 2001-Dec. 2003). . . . The upshot of all this advice is a question-first practice of some popularity, as one can see from the reported cases describing its use, sometimes in obedience to departmental policy.
Id. at 609-11, 124 S.Ct. 2601 (footnote omitted).
If the Seibert plurality opinion is confined to its actual facts, then it has no application here. That is so because Seibert involved the intentional use of the question-first technique: a complete and unwarned interrogation, followed by Miranda warnings, followed by an interrogation covering the same ground. In the present case there was a single statement by the agent (amounting to a one-question interrogation), but no thorough "question first" interrogation like that described in Seibert.
There are, however, statements in the Seibert plurality opinion which the remaining Justices of the Court interpreted to mean that the plurality wished to change the test to be applied in all circumstances where there is an unwarned statement followed by a warned statement. See id. at 621, 124 S.Ct. 2601 (Kennedy, J., concurring in the judgment); id. at 622-23, 627-28, 124 S.Ct. 2601 (O'Connor, J., dissenting) (representing the views of four Justices).
As already stated, Justice Kennedy's opinion concurring in the judgment is the dispositive opinion. Addressing the exact issue now before us, Justice Kennedy stated that "it would be extravagant to treat the presence of one statement that cannot be admitted under Miranda as sufficient reason to prohibit subsequent statements preceded by a proper warning." Id. at 620, 124 S.Ct. 2601 (citing Oregon v. Elstad, 470 U.S. 298, 309, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985)).
Justice Kennedy went on to say, "The admissibility of postwarning statements should continue to be governed by the principles of Elstad unless the deliberate two-step strategy was employed." Id. at 622, 124 S.Ct. 2601. That portion of Justice Kennedy's concurrence is decisive *1097 here, for there was no deliberate use of the two-step strategy under the circumstances of the present case.[3]
Both Justice Kennedy and the dissenting Justices stated that they continued to adhere to Elstad, which outlines the procedure to be employed where, as here, there has been an unwarned statement followed by a warned statement. Seibert, 542 U.S. at 619-22, 124 S.Ct. 2601 (Kennedy, J., concurring in the judgment); id. at 622-23, 627-29, 124 S.Ct. 2601 (O'Connor, J., dissenting). The Elstad decision states that where the first statement was voluntary but unwarned, "[t]he relevant inquiry is whether, in fact, the second statement was also voluntarily made." Elstad, 470 U.S. at 318, 105 S.Ct. 1285. "[A] suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings." Id.
In the present case there was no claim that either the first statement or the second statement was involuntary, that is, coerced. See id. at 312-14, 105 S.Ct. 1285. The second statement was obtained after administration of Miranda warnings. It follows that the post-Miranda statement should not have been suppressed.
For the stated reasons, we affirm the order insofar as it suppressed the pre-Miranda statement. We reverse the order insofar as it suppressed the post-Miranda statement.
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] While the agent acknowledged that he hoped to provoke a response from the defendant, the Innis test is based on a reasonable person standard rather than the subjective intent of the police officer. Id.
[3] Justice Kennedy went on to address the curative measures that would be needed where the two-step strategy has been used, id., but that discussion is not pertinent here.