983 So.2d 726 (2008)
Joseph M. JUMP, Appellant,
v.
STATE of Florida, Appellee.
No. 1D07-1527.
District Court of Appeal of Florida, First District.
June 10, 2008.
Nancy A. Daniels, Public Defender, and Archie F. Gardner, Jr., Assistant Public Defender, Tallahassee, for Appellant.
*727 Bill McCollum, Attorney General, Jennifer J. Moore and Trisha Meggs Pate, Assistant Attorneys General, Tallahassee, for Appellee.
VAN NORTWICK, J.
Joseph M. Jump appeals his convictions and sentences for possession of a controlled substance, possession of less than 20 grams of cannabis, and possession of drug paraphernalia imposed after he entered a plea reserving his right to appeal the denial of his motion to suppress. Relying on Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), Jump argues that, because the officer engaged in the so-called "question first  warn later" interrogation technique prohibited under the Fifth Amendment, the trial court erred in admitting his post-Miranda[1] statements. We agree with our sister courts in State v. Lebron, 979 So.2d 1093 (Fla. 3d DCA 2008) and State v. Pitts, 936 So.2d 1111 (Fla. 2d DCA 2006), that the Seibert holding is narrower than argued by Jump. As the courts in Lebron and Pitts, we hold that, where a defendant makes a statement after receiving a Miranda warning which confirms an earlier voluntary statement made before Miranda warnings were given, the post-Miranda statement is admissible if the police officer did not engage in a calculated two-step strategy to undermine the requirements of Miranda. Thus, we affirm.
At the hearing on Jump's motion to suppress, Deputy Burnham was the sole witness. This testimony reflects that on October 26, 2006, Deputy Burnham arrested Jump for driving under the influence (DUI) in Okaloosa County. Jump's front seat passenger, the owner of the vehicle, was arrested for possession of cocaine and a subsequent search of the car uncovered other drugs. Jump was taken to the county's center for DUI processing. When a subsequent breathalyser test revealed an alcohol content of .051, Burnham became suspicious that Jump was under the influence of a controlled substance and ordered a urinalysis.
At the DUI processing center, Jump and Detective Burnham engaged in a conversation about the implied consent law. See § 316.1932(1)(b), Fla. Stat. (2006). A bag containing all the drugs recovered in the vehicle was located on the desk where Burnham was talking to Jump. When Jump asked Officer Burnham how much trouble he was in, the officer responded that he was not in as much trouble as the owner of the vehicle. Jump then volunteered that most of the drugs in the bag belonged to him. Officer Burnham testified that he was surprised because he did not think that the drugs belonged to Jump and he asked for clarification. After receiving confirmation from Jump that only one bag did not belong to him, Officer Burnham gave Jump Miranda warnings. Afterward, Jump repeated his claim that he owned most of the drugs.
Jump was charged with several drug offenses and two traffic misdemeanors. He filed a motion to suppress all his statements given in the intox room, both before and after he was given his Miranda warnings. He argued that his post-Miranda statements should be suppressed because the Miranda warnings that were given did not cure the prior illegal police conduct. After viewing a tape of the conversation between Jump and Officer Burnham in the intox room, a transcript of which is not contained in the record on appeal, the trial court granted the motion to suppress as to the pre-Miranda statements, but denied the motion to suppress as to the post-Miranda statements. Appellant entered a *728 plea to all five offenses reserving his right to appeal the denial of the motion to suppress his statements concerning the nontraffic, drug offenses.
On appeal, Jump contends that the "question first  warn later" interrogation technique used by Officer Burnham is prohibited by the Fifth Amendment to the United States Constitution, citing Seibert. In Seibert, the officer questioned Seibert and obtained a confession without giving the Miranda warnings. After giving her a twenty minute break, the officer read Seibert her Miranda rights. She repeated her confession. The Missouri trial court allowed admission of the post-Miranda statements relying upon the Supreme Court's decision in Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Seibert appealed, and the Missouri Supreme Court reversed and remanded. State v. Seibert, 93 S.W.3d 700 (Mo.2002). Upon review, the Supreme Court affirmed holding that under the circumstances presented in that case, the post-Miranda warnings were ineffective and the confession repeated after those warnings were given was inadmissible at trial. Seibert, 542 U.S. at 604, 124 S.Ct. 2601.
In Elstad, the Supreme Court held "that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings." 470 U.S. at 318, 105 S.Ct. 1285. However, the Seibert court distinguished Elstad and suppressed the post-Miranda statements because the facts in Seibert "reveal[ed] a police strategy adapted to undermine the Miranda warnings." Seibert, 542 U.S. at 616, 124 S.Ct. 2601. Specifically, the police procedure followed in Seibert involved intentional police conduct in which the officer would interrogate the suspect without Miranda warnings until a confession was obtained, and then that officer would administer Miranda warnings and question the suspect again in order to obtain the same confession. Seibert, 542 U.S. at 604, 124 S.Ct. 2601. In Seibert, "[t]he unwarned interrogation was conducted in the station house, and the questioning was systematic, exhaustive, and managed with psychological skill. When the police were finished there was little, if anything, of incriminating potential left unsaid." Id. at 616, 124 S.Ct. 2601.
The plurality opinion in Seibert, written by Justice Souter and reflecting the views of four justices, expressed concern that the increasingly common police practice of "question first  warn later" was designed to undermine the protections provided by the Miranda warnings. Id. at 609-11, 124 S.Ct. 2601. The four justices in the plurality opinion proposed a broad test for examining such a two-stage interview to determine "whether Miranda warnings delivered midstream could have been effective enough to accomplish their object" given the circumstances of the case. Id. at 615, 124 S.Ct. 2601. However, the views of these four justices were not wholly shared by Justice Kennedy, who concurred in the judgment but on a narrower ground. Id. at 618-22, 124 S.Ct. 2601.
"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, `the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . .'" Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). As our sister courts have recognized, Justice Kennedy's concurring opinion in Seibert offers the narrowest grounds. See State v. Lebron, 979 So.2d at 1095; State v. *729 Pitts, 936 So.2d at 1136. Specifically, in his concurring opinion, Justice Kennedy employed "a narrower test applicable only in the infrequent case . . . in which the two-step interrogation technique was used in a calculated way to undermine the Miranda warnings." Seibert, 542 U.S. at 622, 124 S.Ct. 2601. He added that "[t]he admissibility of post warning statements should continue to be governed by the principles of Elstad unless the deliberate two-step strategy was employed." Id. As Elstad explains, "[it] is an unwarranted extension of Miranda to hold a simple failure to administer the warnings . . . so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period." Elstad, 470 U.S. at 309, 105 S.Ct. 1285.
Turning to the facts in the case before us, DUI investigations are not immune from the requirement that Miranda warnings be given if police are conducting a custodial interrogation. See, e.g., State v. Evans, 692 So.2d 305 (Fla. 4th DCA 1997) (distinguishing cases which hold that a defendant subject to a roadside testing for DUI during a routine traffic stop is not in custody for purposes of the Fifth Amendment and holding that custodial interrogation occurred when the deputy took the defendant to a gas station, told him he was conducting a DUI investigation, and proceeded to ask him investigative questions as well as administered roadside testing); compare State v. Burns, 661 So.2d 842 (Fla. 5th DCA 1995) (asking defendant biographical questions and gathering physical data at driving under the influence testing center was not the type of crucial confrontation or stage which necessitated presence of counsel). While neither the tape nor a transcript of the encounter between Officer Burnham and Jump at the intox center is available to us, the trial court viewed the tape of the conversation between Jump and Burnham in the intox room and concluded that the pre-Miranda statements should be suppressed. Although the state contends that Jump's pre-Miranda warnings should not have been suppressed, the state neither filed a cross-appeal, see Florida Rule of Appellate Procedure 9.140(c)(3), nor brought forward a record sufficient to demonstrate error. Under the circumstances, we affirm the trial court's order which suppressed the pre-Miranda statements. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1980); see also State v. Lebron, 979 So.2d at 1095.
Turning to Jump's post-Miranda statements, we are guided by Justice Kennedy's concurring opinion in Seibert, Seibert, 542 U.S. at 619-22, 124 S.Ct. 2601, that the holding in Elstad continues to be applicable and that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings." Elstad, 470 U.S. at 318, 105 S.Ct. 1285. As Justice Kennedy explained, these principles of Elstad continue to control "unless the deliberate two-step strategy was employed." Seibert, 542 U.S. at 622, 124 S.Ct. 2601 ("If the deliberate two-step strategy has been used, post-warning statements that are related to the substance of the pre-warning statements must be excluded unless curative measures are taken before the post-warning statement is made.").
We are in agreement with our sister courts in Pitts and Lebron that a post-Miranda statement will not be suppressed unless a two-step interrogation technique was used in a calculated manner to undercut the requirements of Miranda. As in both Pitts and Lebron, here there was no deliberate use of a two-step strategy to undermine Miranda and, therefore, the *730 trial court was correct in declining to suppress Jump's post-Miranda statements.
AFFIRMED.
BARFIELD and PADOVANO, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).