NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JUAN JOSE BARRIENTOS, JR.,　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Appellant,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)　　　Case No. 2D14-5870
　　　　　　　　　　　　　　　　　　　　)
STATE OF FLORIDA,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Appellee.　　　　　　　　　　)
_____)

Opinion filed August 16, 2019.

Appeal from the Circuit Court for Collier
County; Ramiro Mañalich, Judge.

Howard L. Dimmig, II, Public Defender, and
Maureen E. Surber, Assistant Public
Defender, Bartow, for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Christina Z. Pacheco,
Assistant Attorney General, Tampa, for
Appellee.

KHOUZAM, Chief Judge.

　　　　　　Juan Jose Barrientos, Jr., appeals his convictions and sentences for first-

degree murder and robbery with a deadly weapon, arguing that the trial court erred in

declining to suppress his statements to police in their entirety.  We affirm.

The record shows that on December 30, 2008, Barrientos—a juvenile at the time—showed up at a Collier County police substation with his mother and sister to report that there had been a death at Six L's Farm two days earlier. In the lobby of the police station and then again after being invited into the sergeant's office, Barrientos stated that he and his friend had been involved in a man's death. He remembered that they had disposed of the body, but he could not recall exactly what had happened because he suffered from blackouts. The detective "let him talk" and did not interrupt or question him. The police did not have a record of any incidents at Six L's Farm, so they called major crimes to respond to the scene. Because at this point the police did not know whether a crime had in fact occurred, the detective did not give Barrientos Miranda[1] warnings. Although Barrientos was free to leave, he was not advised to that effect.

Within approximately half an hour, a detective from major crimes arrived to talk to Barrientos. Barrientos' mother and sister were asked to leave the room, to which no one objected. When asked for permission to speak to Barrientos, his mother stated, "[T]his is why I am here." Barrientos was not Mirandized. This second statement took place from 4:08 p.m. to 4:27 p.m. and was recorded. During this interview, the detectives still had not determined whether a crime had in fact been committed. However, Barrientos confessed that his friend Jesus Garza planned to kill a man named Don Berto—later identified as Roberto Avalos-Jasso—and that Barrientos had helped him do it. Garza had supplied Barrientos with a knife and socks to cover his hands. They agreed on a code word to signal when to kill Don Berto. The three men got into

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

Garza's car, with Don Berto in the front passenger seat and Barrientos in the back. Garza said the code word, and Barrientos blacked out. The next thing he remembered was that Don Berto was on the ground outside the car bleeding from his neck. Barrientos and Garza waited for Don Berto to die, then they grabbed his body and disposed of it in the woods. After that, they cleaned Garza's car. They disposed of the socks and clothes they had worn as well as the towels they had used to clean the car. Garza cleaned the knife and put it back in his house. He also attempted to sell Don Berto's power saw and burn his wallet. Barrientos gave the detective directions to where they could find the body and the various pieces of evidence.

Immediately after this interview, the major crimes detective went to Six L's Farm to investigate whether Barrientos' story was true. The detective testified that when he exited the police station, no one was left to guard Barrientos. The detective found the crime scene and dead body as Barrientos had described. It was at this point the detective "knew for sure" a crime had been committed and they were looking at more than just a "suspicious incident."

The third interview took place later the same day from 7:25 p.m. to 7:59 p.m. Barrientos was given Miranda warnings and signed a waiver. During this interview, Barrientos stated that he did not want to change his previous statement. He repeated essentially the same story that he had already given. Barrientos did make additional incriminating statements as the interview continued, but these statements were suppressed based on inappropriate comments made by the detective. Although his motion to suppress was granted in part, Barrientos contends that both his second and third statements should have been suppressed in their entirety.

**The Second Statement**

Barrientos argues that his second statement to police should have been suppressed because it was made under custodial interrogation without <u>Miranda</u> warnings. Considering the unique circumstances surrounding this statement, however, we conclude that Barrientos was not in custody at the time and that therefore <u>Miranda</u> warnings were not yet required.

"<u>Miranda</u> warnings are not required for every potential suspect." <u>State v. Thompson</u>, 193 So. 3d 916, 920 (Fla. 2d DCA 2016) (citing <u>Wright v. State</u>, 161 So. 3d 442, 448 (Fla. 5th DCA 2014)). Rather, "[t]he warnings apply only to custodial interrogations," where an individual is both in custody <u>and</u> under interrogation. <u>Id.</u> "Absent one or the other, <u>Miranda</u> warnings are not required." <u>Id.</u> (quoting <u>Davis v. State</u>, 698 So. 2d 1182, 1188 (Fla. 1997)).

For purposes of <u>Miranda</u>, custody includes not only formal arrest but also "any restraint on freedom of movement [to] the degree associated with formal arrest." <u>Id.</u> (quoting <u>Ramirez v. State</u>, 739 So. 2d 568, 573 (Fla. 1999)). In determining whether a suspect is in custody, courts apply a reasonable person test, focusing on how a reasonable person in the suspect's position would perceive the situation—not on the unarticulated plan of law enforcement. <u>Id.</u> "<u>Miranda</u> warnings are not required simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." <u>Id.</u> (quoting <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983)).

"If a reasonable person in the suspect's position would understand that the police have probable cause to arrest the suspect for a serious crime such as murder or

kidnapping, that circumstance militates strongly toward the conclusion that the suspect is in custody." State v. Pitts, 936 So. 2d 1111, 1128 (Fla. 2d DCA 2006) (footnotes omitted). "A reasonable person understands that when a suspect confesses to committing a serious criminal act, the police ordinarily will not permit the suspect to go free." Id. at 1134. Therefore, a confession can transform an interrogation from noncustodial to custodial. Id.

We consider four nonexclusive factors in evaluating whether the suspect is in custody for purposes of Miranda: "(1) the manner in which the police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of her guilt; and (4) whether the suspect is informed that she is free to leave." Thompson, 193 So. 3d at 920 (quoting Ramirez, 739 So. 2d at 574). The ultimate inquiry is "whether, under a totality of the circumstances, 'a reasonable person in the suspect's position would feel a restraint of his or her freedom of movement, fairly characterized, so that the suspect would not feel free to leave or to terminate the encounter with police.' " Id. (quoting Ross v. State, 45 So. 3d 403, 415 (Fla. 2010)).

Applying this test to the facts of this case, we conclude that Barrientos was not in custody at the time he made the second statement. The record shows that Barrientos voluntarily came to the police station to provide information about his crimes. He was not summoned for questioning. Even though Barrientos implicated himself in very serious criminal conduct, the police did not know whether his story was true until they investigated Barrientos' claims. Without confirmation that a man was actually dead, much less that he had been murdered, Barrientos could not have been

- 5 -

considered a suspect in that murder. Moreover, Barrientos was not confronted with evidence of his guilt—the police did not yet have such evidence. The interview was short (approximately twenty minutes) and casual. Barrientos' mother gave permission for the detectives to speak with him. The interview began mostly with Barrientos speaking in narrative form. The detective later asked clarifying questions but did not pressure, coerce, or intimidate Barrientos. Barrientos' freedom of movement was not restricted. He was not handcuffed, and he was free to leave. According to the detective, no one was left to guard Barrientos when the detective left the station to investigate his story. Rather, Barrientos and his family agreed to wait at the station while the detective investigated.

Under these circumstances, we cannot say that Barrientos' freedom of movement was restrained to the degree associated with formal arrest at the time he made the second statement. Because he was not in custody, Miranda warnings were not required and the trial court properly denied Barrientos' motion to suppress as to this statement.

**The Third Statement**

Barrientos argues that the trial court erred in failing to suppress his third statement in its entirety because his Miranda waiver was rendered involuntary by law enforcement's deliberate delay in giving the warning. It is important to note that most of this statement was indeed suppressed because the court found that the detective made improper comments.

"[W]here a defendant makes a statement after receiving a Miranda warning which confirms an earlier voluntary statement made before Miranda warnings

- 6 -

were given, the post-<u>Miranda</u> statement is admissible if the police officer did not engage in a calculated two-step strategy to undermine the requirements of <u>Miranda</u>." <u>Dyer v. State</u>, 16 So. 3d 990, 991 (Fla. 3d DCA 2009); <u>Jump v. State</u>, 983 So. 2d 726, 727 (Fla. 1st DCA 2008); <u>see also</u> <u>State v. Lebron</u>, 979 So. 2d 1093, 1097 (Fla. 3d DCA 2008); <u>Pitts</u>, 936 So. 2d at 1135. "[A] suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite <u>Miranda</u> warnings." <u>Dyer</u>, 16 So. 3d at 991 (quoting <u>Oregon v. Elstad</u>, 470 U.S. 298, 318 (1985)).

As already discussed, the detectives were not required to Mirandize Barrientos at the time he made his second statement. There is no evidence to suggest that the detectives strategically delayed providing <u>Miranda</u> warnings in order to secure a confession. Rather, between the second and third statements the detectives took time to investigate whether there was any truth to Barrientos' story and whether a crime had in fact been committed. Once they realized that a crime had been committed, they Mirandized Barrientos before proceeding with questioning. Accordingly, we conclude that the trial court properly declined to suppress the beginning of the third statement.

Because the trial court did not err in denying, in part, Barrientos' motion to suppress, we affirm.

Affirmed.

NORTHCUTT and KELLY, JJ., Concur.