842 So.2d 868 (2003)
Joseph Anthony AHEDO, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-2971.
District Court of Appeal of Florida, Second District.
January 17, 2003.
*869 James Marion Moorman, Public Defender, and Cynthia J. Dodge, Assistant Public Defender, Bartow, for Appellant.
Charlie Crist, Attorney General, Tallahassee, and C. Suzanne Bechard, Assistant Attorney General, Tampa, for Appellee.
COVINGTON, Judge.
Joseph A. Ahedo challenges his judgment of conviction and sentence on the charge of armed burglary of a dwelling. Ahedo had pleaded guilty while reserving the right to appeal the trial court's denial of his motion to suppress confession. We affirm the trial court's denial of Ahedo's motion to suppress. However, in light of issues presented concerning Ahedo's competency, we remand for resentencing.
On May 9, 1999, at 9 a.m., officers of the Tampa Police Department placed Ahedo under arrest for carrying a concealed firearm. About thirty minutes after his arrest, Corporal Dale Osada read Miranda[1] warnings to Ahedo. Indicating that he understood his Miranda rights, Ahedo invoked his right to remain silent and said that he wanted to speak to a lawyer first. Corporal Osada wrote "refused" on the *870 Tampa Police Department consent and release form where Ahedo's signature was to have been placed. Other than asking him questions such as his name, height, and weight, after Ahedo invoked his rights, officers did not attempt to further question him.
Officer A.J. Peterson took Ahedo to the sector office about four blocks away from the arrest site. Ahedo was placed in a holding cell while the officers completed their paperwork and prepared to transport him to the jail. About an hour and a half to two hours after his arrest, Ahedo told Officer Peterson that he wanted to speak to Corporal Osada.
In light of the fact that Ahedo had wanted to speak to him "about what was going on," Corporal Osada returned to meet with Ahedo at 11:02 a.m. Corporal Osada noted, "As a normal part of my protocol, I believe I told him that he did invoke and requested that I was clear that he wanted to speak with me about this incident, at which time he answered in an affirmative manner." However, Corporal Osada did not read Ahedo his rights again, nor did he ask Ahedo to sign a form. During the course of the conversation, Ahedo told Corporal Osada that he had taken a .357 handgun, two shotguns, a rifle, as well as some other items from a burglary in Sarasota. Ahedo described the house that he had stolen the items from and said that he had been trying to sell the firearms at the time of his arrest. He also stated that the woman who was with him at the time of the arrest had no knowledge of the burglary. Corporal Osada believed that Ahedo was admitting to the crime because he did not want his girlfriend charged.
The information Ahedo gave to the Tampa Police Department was provided to the Sarasota County Sheriff's Office. On May 26, 1999, Detective Dwight Burns of the Sarasota County Sheriff's Office went to the Hillsborough County Jail to speak with Ahedo. Detective Burns informed Ahedo of his Miranda rights, and Ahedo agreed to make a statement. Detective Burns and Ahedo spoke for several minutes concerning the burglary. In their conversation, Ahedo admitted that he took a couple of shotguns and a .357 that he later sold at a truck stop. In addition, Ahedo told Detective Burns that he wanted to make sure that his girlfriend was not implicated. At no time did Ahedo ask for counsel.
Ahedo filed a motion to suppress both his statement to Corporal Osada as well as his statement to Detective Burns. Finding that Ahedo had "initiated conversation with law enforcement officers," the trial court denied the motion to suppress. We agree.
Once an accused has invoked his right to counsel during an interrogation, he may not be subjected to additional police questioning "unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Here, all substantive questioning ceased once Ahedo invoked his rights. It was Ahedo himself, however, who reinitiated contact with the police. Ahedo was in a holding cell in the presence of Officer Peterson. However, Ahedo asked to speak with Corporal Osada. It was Corporal Osada who had given Ahedo his Miranda warnings less than two hours earlier.
Ahedo argues that his request to speak with Corporal Osada about "what was going on" was not an invitation for conversation about the investigation and, even if it were, that the State failed to show a knowing and intelligent waiver of Ahedo's previously asserted rights. However, case law does not support Ahedo's position. In Francis v. State, 808 So.2d 110, 127 (Fla. *871 2001), cert. denied, ___ U.S. ___, 123 S.Ct. 696, 154 L.Ed.2d 635 (2002), the court rejected Francis' contention that his knock on the door "to find out what was going on" did not become initiation of contact with the police. In reaching its decision, the court in Francis relied on the United States Supreme Court decision in Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). The Bradshaw Court, in its plurality opinion, stated:
Although ambiguous, the respondent's question in this case as to what was going to happen to him evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship. It could reasonably have been interpreted by the officer as relating generally to the investigation.
Id. at 1045-46, 103 S.Ct. 2830. As examples of inquiries by an accused "relating to routine incidents of the custodial relationship," the Bradshaw Court cited "a request for a drink of water or a request to use a telephone." Id. Here, under the circumstances presented, it is easy to see how Corporal Osada could have reasonably interpreted Ahedo's request to discuss "what was going on" as an inquiry relating to the criminal investigation.
Even though Corporal Osada did not readvise Ahedo of his Miranda rights or have him sign a waiver before taking his statement, this, in and of itself, does not mean that Ahedo's waiver was invalid. See, e.g., Johnson v. State, 660 So.2d 637, 642 (Fla.1995) ("There is no requirement of additional warnings during the same period of interrogation where it is clear detainees are aware of their rights...."); Escobar v. State, 699 So.2d 988, 994 (Fla. 1997) (no need for additional warnings when incriminating "statement was made approximately six hours after the first statement"), abrogated on other grounds, Connor v. State, 803 So.2d 598 (Fla.2001). There is no indication that the initial Miranda warnings were incorrectly stated or that Ahedo failed to understand them. Rather, Ahedo's request to speak with Corporal Osada, the officer who had originally advised Ahedo of his rights less than two hours before, lends support to the notion that Ahedo was fully cognizant of his rights.
Likewise, the statements made to Detective Burns were properly admitted. Detective Burns advised Ahedo of his Miranda rights before and during a taped statement concerning the burglary. At no time during the questioning did Ahedo indicate that he wanted to invoke his rights. Thus, we affirm the trial court's ruling as to the admissibility of Ahedo's statements.
After the trial court denied Ahedo's motion to suppress, Ahedo changed his plea to guilty without the benefit of a negotiated sentence. Sentencing was set for December 29, 2000. However, on October 18, 2000, Ahedo's lawyer's request to withdraw was granted, and Ahedo was permitted to represent himself. At the December 29, 2000, sentencing hearing, Ahedo consented to the appointment of new counsel, and the hearing was continued. Ahedo's new counsel requested the appointment of a mental health expert to perform an evaluation pursuant to Florida Rule of Criminal Procedure 3.216(a). Ahedo was examined by the expert, and at the June 6, 2001, hearing, defense counsel informed the court that, preliminarily, the expert did "not believe that there [was] an issue of competency." However, the expert had not had the opportunity to complete his report because he was not able to review the "rather extensive psychiatric and psychological records ... that are in the custody of the Department of Corrections." *872 Based on the fact that the expert had not been able to render an opinion, Ahedo's lawyer told the court that he would not be able to proceed with sentencing. Consequently, the trial court informed Ahedo that the sentencing was going to be continued until the report could be completed. Ahedo was asked to sign a release so that the medical records could be more easily obtained.
Despite the court's willingness to continue the sentencing, Ahedo persisted in his request that he be sentenced that day. His lawyer announced that if the hearing was not continued, he would move to withdraw from the case. The trial court recognized the difficult situation it faced and commented, "But I'm real concerned about this particular issue. I'm going to go ahead and continue this." Notwithstanding its concerns, the trial court did not continue the sentencing hearing. The trial court allowed Ahedo's lawyer to withdraw and sentenced Ahedo to a mandatory life sentence.
Ahedo contends on appeal that the trial court's Faretta[2] hearing was inadequate and that he should not have been sentenced when there were questions remaining regarding his competence. The focus in conducting a waiver of counsel hearing should be on the defendant's competence to waive counsel, not on his competence to represent himself. Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); State v. Bowen, 698 So.2d 248, 251 (Fla.1997).
The record reveals that at the September 8, 2000, plea hearing, the trial court did inquire as to Ahedo's age, educational level, ability to understand English, as well as his medical, psychiatric, and pharmacological history. Nevertheless, at the time of the June 6, 2001, hearing, issues remained as to Ahedo's competency. An expert had been appointed by the trial court to examine Ahedo. However, the expert's report had not been finalized because of his inability to review Ahedo's extensive psychiatric and psychological records. The expert's completed report, including review of Ahedo's medical records, should have been considered before Ahedo was sentenced. Thus, although the trial court was placed in a difficult position because of Ahedo's insistence that he be sentenced that day, it was error for the court to have sentenced Ahedo without the benefit of the appointed expert's complete report.
In light of the foregoing, this matter is remanded for resentencing. This will allow the mental health expert the opportunity to review all of Ahedo's medical records in issuing an opinion as to Ahedo's competency. In all other respects the judgment of the trial court is affirmed.
Affirmed in part and remanded for resentencing.
BLUE, C.J., and GREEN, OLIVER L., Senior Judge, Concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).