854 So.2d 740 (2003)
Siroos PIRZADEH, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-3244.
District Court of Appeal of Florida, Fifth District.
August 22, 2003.
Rehearing Denied September 24, 2003.
*741 Michael J. Snure and William R. Ponall of Kirkconnell, Lindsey, Snure and Yates, P. A., Winter Park, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Patrick W. Krechowski, Assistant Attorney General, Daytona Beach, for Appellee.
NICHOLS, A. W., Associate Judge.
Siroos Pirzadeh was charged and brought to trial on four counts of trafficking in opium in various amounts. Following a jury trial, Pirzadeh was found guilty of three lesser included counts of possession of opium. He was sentenced to five years' imprisonment on each count with each count to run consecutively to the other. Pirzadeh raises eight points of appeal. We reverse on the first issue and find the remaining issues moot.
Prior to trial, Pirzadeh moved to suppress a written statement he made to Detective Andrew Burke of the Orange County Sheriff's Office on the basis that the statement was obtained in violation of his right to counsel under the Florida and United States Constitutions. The statement was made as follows:
I told the agent that I want to write the statement, I am writing this in my own free will, the agent promises nothing, I had 220 grams of opium in my store, I paid $6,000 and bought that six days ago, I am not an opium trafficker, I use that for my own, this 220 grams of opium should last me about one year, I buy the opium from the friend I know, when I bought that, the opium comes in candy *742 wrapper, I have back problems and I use it to remedy pain, I own the gas station at 4316 Curryford Road, Orlando, Florida 32806, another agent read my rights and I chose to write the statement anyway.
During the suppression hearing, both sides stipulated that Pirzadeh was placed under arrest, advised of his Miranda[1] rights, and invoked his right to counsel prior to being transported to the Orange County Jail. While being booked at the jail, Detective Burke approached Pirzadeh and explained to him what crimes he was being charged with and what the sentencing guidelines for those crimes were. Detective Burke also told Pirzadeh that he was not going to give Pirzadeh a bond at that time because he considered Pirzadeh a flight risk. At that time, Detective Burke did not ask Pirzadeh any questions or make any promises to him. Once Pirzadeh was advised of the charges and the no-bond status, Pirzadeh said he wanted to cooperate because he wanted a bond. Burke told Pirzadeh he still was not going to give him a bond and that he should get an attorney and seek a hearing.
This back and forth dialogue continued between Detective Burke and Pirzadeh with Pirzadeh claiming he would cooperate and wanted a bond, and the detective stating he would not get a bond. During this continuing exchange, the detective testified he told Pirzadeh that Pirzadeh could cooperate, but he was not going to recommend a bond. Pirzadeh told Detective Burke that he still wanted to cooperate and that he wanted a bond. The detective told Pirzadeh that if Pirzadeh wanted to cooperate, that would be fine, but the detective would not give him any assistance and would continue to recommend no bond. The trial court denied Pirzadeh's motion to suppress and Pirzadeh's written statement was read into evidence and a blown-up copy published to the jury.
The issue in this case is whether the trial court erred in denying Pirzadeh's motion to suppress his written statement. As it was stipulated that Pirzadeh was in custody at the time he spoke with Detective Burke and that Detective Burke initiated the contact, the only issue is whether Detective Burke's actions constituted an improper custodial interrogation.
In the constitutional sense, an interrogation can be either the direct asking of questions or its "functional equivalent." The functional equivalent of interrogation includes any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In Larson v. State, 753 So.2d 733 (Fla. 2d DCA 2000), the Second District Court of Appeal found that an officer who held a conversation with a defendant about the crimes for which he was charged, and told the defendant that he was facing a twenty-five-year sentence, was conducting an interrogation of the defendant because those statements were reasonably likely to elicit an incriminating response from the defendant.
The current case goes beyond Larson. Not only did the detective inform Pirzadeh of the crimes with which he was charged and the possible sentence, but also told Pirzadeh he would not be given a bond. Whether or not Pirzadeh believed that the detective had any control over the bond is immaterial. Once the detective told Pirzadeh about the nature of the charges *743 against him, he should have terminated the confrontation as it became clear that continuing the conversation would lead to an incriminating response.
The State argues that Pirzadeh reinitiated the conversation after invoking the right to counsel. The United States Supreme Court has held that when an accused has invoked his right to counsel, all interrogation must cease immediately until counsel is made available, unless the accused reinitiates further communication with law enforcement. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The State relies on Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); Francis v. State, 808 So.2d 110 (Fla.2001), and Hill v. State, 772 So.2d 19 (Fla. 2d DCA), review denied, 790 So.2d 1104 (Fla.2001), for the proposition that Pirzadeh reinitiated the conversation. The State's reliance is misplaced. In Bradshaw, the defendant asked the police officers, "Well, what is going to happen to me now?" In Francis, the defendant knocked on the door of the interrogation room and asked what was going on after being inside for three and one-half hours. And, in Hill, the defendant requested a meeting with a detective after a visit from his probation officer.
There is no question that it was Detective Burke, and not Pirzadeh, who initiated the contact after Pirzadeh invoked his right to counsel. All Pirzadeh did was respond to the renewed contact by continuing to express his interest in cooperating and in getting a bond. The law concerning Miranda warnings and the right to counsel establishes a policy whose purpose is to prevent what happened in this case. The trial court should have granted Pirzadeh's motion to suppress the written statementthe result of the improper initiation of conversation after invocation of the right to counsel.
REVERSED AND REMANDED.
GRIFFIN and MONACO, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).