WALLACE, Judge.
 

 The State appeals the circuit court’s order suppressing statements made by the defendant, Arthur Lee Hunt, in response to a custodial interrogation conducted after Mr. Hunt had reinitiated dialogue with detectives following his initial invocation of his right to remain silent under
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 
 [1]
 
 Because the circuit court applied the incorrect law in determining whether the statements should be suppressed, we reverse and remand for further proceedings.
 

 I. THE FACTUAL AND PROCEDURAL BACKGROUND
 

 On October 31, 2007, Mr. Hunt, who had recently been released from prison, was arrested for an alleged violation of his probation. Following the arrest, Detective William Waldron and Detective Sam Levi-ta of the Manatee County Sheriff’s Office interviewed Mr. Hunt concerning a pend
 
 *1037
 
 ing homicide investigation. The interview was interrupted and then reinitiated. Both the. first and the second portions of the interview were recorded on videotape.
 

 Before the interview began, Detective Levita advised Mr. Hunt of his
 
 Miranda
 
 rights, and Mr. Hunt executed a written waiver of those rights. The detectives then offered Mr. Hunt “water or coffee or anything.” Mr. Hunt responded that he wanted a cigarette. Detective Levita told Mr. Hunt that they would go outside later and allow him to smoke then.
 

 During the first portion of the interview, Mr. Hunt admitted to smoking “a little marijuana” between the date of his release from prison and the date of his arrest. After speaking with the detectives for approximately thirty minutes, Mr. Hunt declared, “I’m through talking, man.” At this, the detectives stopped asking questions about the homicide investigation.
 

 Immediately following Mr. Hunt’s invocation of his right to remain silent, Detective Waldron asked Mr. Hunt: “You want to go have that cigarette now?” Mr. Hunt responded affirmatively. Detective Wal-dron then escorted Mr. Hunt downstairs to the outside of the building. Detective Levita — who was the lead detective on the pending homicide investigation — did not-accompany them. While outside, Detective Waldron and Mr. Hunt each smoked two cigarettes. Detective Waldron estimated that he and Mr. Hunt were out of the building for approximately twenty minutes.
 

 At the hearing on the motion to suppress, Detective Waldron testified that Mr. Hunt reinitiated the conversation concerning the pending homicide investigation while the two men were outside. Detective Waldron provided the only testimony concerning what occurred outside the building as follows:
 

 Mr. Hunt initiated the conversation, kept telling me that, you know, he had nothing to do with this, you know; he was, being just recently getting out of state custody, he was worried that this was going to affect his status; and kept asking questions about the case. Said, you know, [the victim] was family and he would never do anything like this.
 

 [[Image here]]
 

 He was just asking me questions about the case, telling me this was family, he would never do anything like this, he didn’t know why he was being accused, kept talking about the case, asking me questions. I knew very little about the homicide investigation itself, since I had no active participation in it up until the point of this interview. And I explained to Mr. Hunt, I said if there’s things that you want to talk to Detective Levita about that might assist in the homicide investigation, you know, might be in your best interest to talk to him.
 

 And he kept asking more questions, I had reminded him a couple of times, you know, I said, Arthur, you asked for an attorney, you said you didn’t want to talk any more, said, but you’re asking me these questions. And he says, Well, I got to know, you know, I need to know what’s going on here. And I said, When we get back upstairs, if you want to talk about this case and ask Detective Levita questions, you need to make that clear to Detective Levita, who’s the lead investigator. And we can go back, but any questions you may ask or we may ask -will have to be back on tape.
 

 According to Detective Waldron, Mr. Hunt agreed to speak further with the detectives about the subject of the investigation.
 

 After Detective Waldron and Mr. Hunt returned to the room where the interview had been taking place, Detective Waldron informed Detective Levita about what had
 
 *1038
 
 occurred outside the building. Mr. Hunt confirmed that he wished to speak to the detectives further, and the interview resumed. The detectives did not repeat the
 
 Miranda
 
 warnings that they had previously given. During the course of the second portion of the interview, Mr. Hunt said that he had been in possession of a gun three days before the homicide occurred.
 
 [2]
 
 After additional conversation, Mr. Hunt once again invoked his right to remain silent, and the detectives terminated the interview.
 

 The State subsequently charged Mr. Hunt with possession of a firearm by a convicted felon, section 790.23, Florida Statutes (2007). He filed motions to suppress his statements in both the case for which he was on probation and in the firearm possession case. After a hearing, the trial court denied the motion as to the first portion of the statement and granted the motion as to the second portion of the statement. On appeal, the State challenges the order to the extent that it suppressed the second portion of the statement.
 

 II. THE STANDARD OF REVIEW
 

 A lower court’s ruling on a motion to suppress is presumptively correct and will be upheld if supported by the record.
 
 Cuervo v. State,
 
 967 So.2d 155, 160 (Fla.2007);
 
 State v. Shuttleworth,
 
 927 So.2d 975, 978 (Fla. 2d DCA 2006). The reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.
 
 Doorbal v. State,
 
 837 So.2d 940, 952 (Fla.2003) (quoting
 
 Terry v. State,
 
 668 So.2d 954, 958 (Fla.1996)). An appellate court is bound by the lower court’s factual findings if they are supported by competent, substantial evidence.
 
 Cuervo,
 
 967 So.2d at 160. However, the lower court’s application of the law to the facts is reviewed de novo.
 
 Id.
 

 III. THE APPLICABLE LAW
 

 After a suspect invokes his or her right to remain silent during a custodial interrogation, “ ‘the interrogation must cease.’ ”
 
 Michigan v. Mosley,
 
 423 U.S. 96, 100, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (quoting
 
 Miranda,
 
 384 U.S. at 473-74, 86 S.Ct. 1602). It follows that after a suspect invokes his or her right to remain silent, the police must refrain from “any words or actions ... (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.”
 
 Rhode Island v. Innis,
 
 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (footnote omitted). Any statements obtained thereafter are admissible only if the suspect’s right was “scrupulously honored.”
 
 Mosley,
 
 423 U.S. at 104, 96 S.Ct. 321.
 

 Where, as here, a suspect has made statements to the police after invoking his right to remain silent, the correct approach to determining whether the police have scrupulously honored the suspect’s right to remain silent may require a two-step analysis. In the first step, courts must decide whether the police continued to interrogate the suspect despite his or her invocation of the right to remain silent. If the police continued the interrogation, then they failed to scrupulously honor the right to remain silent and the resulting statements are inadmissible.
 
 Cuervo,
 
 967 So.2d at 166-67;
 
 Martin v. State,
 
 987 So.2d 1240, 1241 (Fla. 2d DCA 2008). Un
 
 *1039
 
 der these circumstances, the court need not proceed to the second step.
 

 On the other hand, if the interrogation ceased, the court must proceed to the second step of the analysis. In the second step, the court must determine who reiniti-ated the dialogue. The answer to this question determines what factors the court must examine in resolving the issue.
 

 In cases where the police reinitiat-ed the dialogue, courts must examine the following factors: (1) whether the suspect was informed of his or her
 
 Miranda
 
 rights at the outset of each interrogation, (2) whether the police immediately ceased questioning after the suspect invoked the right, (3) whether there was a sufficient lapse of time between the invocation of the right and the resumption of questioning, (4) whether questioning resumed at a different location, and (5) whether the two rounds of questioning concerned different crimes.
 
 See Mosley,
 
 423 U.S. at 106, 96 S.Ct. 321;
 
 Globe v. State,
 
 877 So.2d 663, 670 (Fla.2004),
 
 abrogation recognized on other grounds in State v. Hernandez,
 
 875 So.2d 1271, 1273 (Fla. 3d DCA 2004);
 
 State v. Belcher,
 
 520 So.2d 303, 304 (Fla. 3d DCA 1988);
 
 State v. Taylor,
 
 838 So.2d 729, 739 (La.2003).
 

 However, where it was the suspect who reinitiated the dialogue with the authorities, the inquiry is different. Under these circumstances, the courts consider whether the suspect’s decision to change his or her mind and to waive his or her rights by speaking with the authorities was voluntary, knowing, and intelligent.
 
 See Welch v. State,
 
 992 So.2d 206, 214-15 (Fla.2008) (citing
 
 Oregon v. Bradshaw,
 
 462 U.S. 1039, 1045-46, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983));
 
 People v. Bell,
 
 217 Ill.App.3d 985, 160 Ill.Dec. 657, 577 N.E.2d 1228, 1237-38 (1991);
 
 Taylor,
 
 838 So.2d at 739-40.
 

 [W]here the defendant initiates further communications, the passage of time after the invocation of
 
 Miranda
 
 rights is not a critical element. What is important is the fact that further communications were initiated by the defendant. This distinction was recognized in
 
 Mosley,
 
 where the Court characterized as “absurd” a-reading of
 
 Miranda
 
 which would exclude from evidence statements made after the cessation of an interrogation even if those statements “were volunteered by the person in custody without further interrogation whatever.”
 
 Mosley,
 
 423 U.S. at 102, 96 S.Ct. 321....
 

 Bell,
 
 577 N.E.2d at 1238.
 

 IV. THE CIRCUIT COURT’S ORDER
 

 After the hearing on the motion to suppress, the circuit court entered a lengthy order with detailed findings of facts and conclusions of law.
 
 [3]
 
 The pertinent portions of this order bear quoting at length:
 

 G. In the case at bar the court finds the Detectives’ conduct somewhat troublesome in light of the critical factors established for determining whether Mr. Hunt’s invocation was “scrupulously honored[.”] The Court finds it clear that the Detectives initially read
 
 Miranda,
 
 and
 
 that they appeared on video to have ceased all questioning upon Mr. Httnt’s invocation.
 
 However, the Court also finds it is equally clear that the Detective’s conduct in removing a handcuffed Mr. Hunt for a smoke, staying in his constant company instead of proceeding with normal ■ arrest procedures could be interpreted as generally engaging in words or actions that they should
 
 *1040
 
 have know[n] were reasonably likely to elicit an incriminating response. In fact, the court finds the Detectives’ actions did not embrace the spirit of “scrupulously honoring” Mr. Hunt’s invocation, but instead created an environment likely to entice Mr. Hunt into reinitiating contact. There was no evidence presented by the State that the Detectives complied with [several of the critical factors identified in
 
 Mosley].
 
 Less than twenty minutes was not a significant passage of time, there was no rereading of
 
 Miranda,
 
 and the second period of questioning related to the exact same homicide. However, the court also finds that while the Detective may have set the stage,
 
 there is no evidence [that] Detective Waldron specifically initiated conversations referencfing] the homicide with Mr. Hunt, nor that Mr. Hunt was unwilling to take a smoke break with the officer. Instead,, the preponderance of the evidence is Mr. Hunt did in fact consent to go for a smoke and that he alone reinitiated contact reference the homicide.
 

 [[Image here]]
 

 J. In the case at bar Mr. Hunt made an unequivocal invocation followed by Mr. Hunt reinitiated [sic] contact with Detective Waldron during the smoke break. The Detectives never reread Mr. Hunt his
 
 Miranda
 
 rights. The failure to reread
 
 Miranda
 
 coupled with the Detectives[’] failure to “scrupulously honor” Mr. Hunt’s invocation mandate suppression of all [of] Mr. Hunt’s statements made in the [second] portion of his videotaped statement.
 

 (Emphasis added.) Despite the obvious care and thought that went into the circuit court’s order, we agree with the State that the circuit court’s analysis of the issues went awry.
 

 V. DISCUSSION
 

 The correct resolution of the issues raised by Mr. Hunt’s motion to dismiss required the application of the two-step analysis discussed above. In the first step, the circuit court found that the interrogation of Mr. Hunt ceased after he initially invoked his right to remain silent at the conclusion of the first portion of the videotaped statement. According to the circuit court’s order, the detectives “appeared on video to have ceased all questioning upon Mr. Hunt’s invocation.” Indeed, there was no evidence to the contrary. The detectives did not continue the interrogation of Mr. Hunt following his initial invocation of the right to remain silent. Thus the circuit court properly proceeded to the second step of the analysis.
 

 Under the second step of the analysis, the circuit court was required to determine who reinitiated the dialogue. The circuit court found that “there is no evidence [that] Detective Waldron specifically initiated conversations referencing] the homicide with Mr. Hunt.” In conjunction with that finding, the circuit court also made the critical finding that “the preponderance of the evidence is Mr. Hunt did in fact consent to go for a smoke and that he alone reinitiated contact reference the homicide.” There is competent, substantial evidence in the record to support both of these findings.
 

 Once the circuit court found that it was Mr. Hunt who reinitiated the dialogue with the detectives, the circuit court was required to consider whether Mr. Hunt’s decision to change his mind and to once again waive his right to remain silent was voluntary, knowing, and intelligent. Instead, the circuit court relied heavily on
 
 Mosley to
 
 conclude that the detectives had not scrupulously honored Mr. Hunt’s right to remain silent. But because it was Mr.
 
 *1041
 
 Hunt who reinitiated the dialogue with the detectives after he had invoked his right to remain silent,
 
 Mosley
 
 and similar eases relating to the admissibility of statements made after the interrogation is terminated and then restarted by the police are inapplicable.
 

 VI. CONCLUSION
 

 It follows that the circuit court applied an incorrect standard in determining whether the second portion of Mr. Hunt’s statement should be suppressed. Accordingly, we reverse the circuit court’s order to the extent that it suppressed the second portion of the statement and remand this case to the circuit court for further consideration of this issue in light of this opinion. Of course, the State has not challenged the portion of the circuit court’s order that denied the defendant’s motion to suppress the first portion of Mr. Hunt’s statement.
 

 Since the circuit court must reconsider the issue of the admissibility of the second portion of Mr. Hunt’s statement, we offer the following additional comments for the circuit court’s guidance on remand. In reaching its ruling, the circuit court placed substantial weight on the detectives’ failure to reread the
 
 Miranda
 
 warnings to Mr. Hunt before beginning the second portion of the interview. However, the Supreme Court of Florida has refused to “adhere to an overly mechanical application of
 
 Miranda
 
 ” and has explained that “numerous state and federal courts have rejected the talismanic notion that a complete readvisement of
 
 Miranda
 
 warnings is necessary every time an accused undergoes additional custodial interrogation.”
 
 Davis v. State,
 
 698 So.2d 1182, 1189 (Fla.1997) (citing
 
 Brown v. State,
 
 661 P.2d 1024 (Wyo.1983)). Thus the failure to readvise a suspect of his or her
 
 Miranda
 
 rights, “in and of itself, does not mean that [the suspect’s] waiver was invalid.”
 
 Ahedo v. State,
 
 842 So.2d 868, 871 (Fla. 2d DCA 2003). Here, Mr. Hunt was not readvised about his
 
 Miranda
 
 rights, but Detective Waldron reminded Mr. Hunt that he had said that he did not want to talk any further. Moreover, Detective Levita had advised Mr. Hunt about his
 
 Miranda
 
 rights less than an hour before the second portion of the interview began.
 

 Reversed and remanded for further proceedings consistent with this opinion.
 

 ALTENBERND and DAVIS, JJ., Concur.
 

 [1]
 

 . We have jurisdiction under Florida Rule of Appellate Procedure 9.140(c)(1)(B).
 

 [2]
 

 . The detectives apparently believed that the gun Mr. Hunt referred to was the one that had been used in the homicide that they were investigating.
 

 [3]
 

 . The State filed a motion for rehearing. The circuit court denied this motion in a second order with additional findings of fact and conclusions of law.