VILLANTI, Judge.
 

 The State appeals the trial court’s order suppressing statements made by Michael Byron Edenfield to a deputy sheriff. Because Edenfield was in jail when he made the incriminating statements, the trial court concluded that he was automatically entitled, without exception, to be read
 
 Miranda
 

 [1]
 
 warnings before
 
 any
 
 conversations with a law enforcement officer could occur. Because the trial court’s order relies on this incorrect legal assumption and lacks critical factual findings, we reverse and remand for further proceedings.
 

 Although “[a]n appellate court reviewing a ruling on a motion to suppress presumes that a trial court’s findings of fact are correct and reverses those findings only if they are not supported by competent, substantial evidence[,]” the trial court’s application of the law to the historical facts is subject to de novo review.
 
 Cuervo v. State,
 
 967 So.2d 155, 160 (Fla.2007).
 

 In this case, Deputy Michael Frentón
 
 [2]
 
 and another officer visited Edenfield’s home to conduct a “wellness check” on Edenfield’s grandmother. While conducting the check, they noticed several potted marijuana plants in plain view in front of the residence. Although the wellness check proved satisfactory, Deputy Frentón questioned Edenfield about the plants. Edenfield denied they belonged to him. The plants were then seized, but Edenfield was not arrested at that time. Law enforcement had further contact with Eden-field in the weeks following the initial visit, in the course of following up on his grandmother’s well-being. The investigation into the marijuana plants continued, and Edenfield was eventually arrested and charged with manufacture and possession of cannabis and possession of paraphernalia. Edenfield remained in jail following his arrest because he apparently could not make bond.
 

 After being in jail for approximately one month, Edenfield requested to speak to a law enforcement officer concerning items allegedly stolen from his home during his absence.
 
 [3]
 
 Deputy Frentón responded to Edenfield’s jail visit request. When the deputy arrived at the jail, Edenfield asked to go to a private room. Deputy Frentón obliged by bringing him to an attorney meeting room. Once in the room, Eden-field did not ask to have an attorney present. Instead, Edenfield indicated that he would give the deputy information about drug activity in exchange for favorable treatment on his pending charges, and he began providing names of people allegedly involved in such activities.
 
 [4]
 
 Deputy Fren-
 
 *224
 
 ton made no promises of favorable treatment and simply said that he would pass the information on to a narcotics officer. Toward the end of their conversation, Edenfield made incriminating statements concerning his ownership of the marijuana plants in question.
 

 Thereafter, Edenfield filed a motion to suppress the incriminating statements, which the trial court granted after an evi-dentiary hearing. However, in issuing its order suppressing Edenfield’s incriminating statements, the trial court did not address key factual points of dispute, such as how the conversation turned from Edenfield’s stolen property claim and the identity of suspected drug dealers to the charges pending against Edenfield, who initiated the conversation related to the pending criminal charges, or why the current criminal charges became part of the discussion. Notably, the trial court granted suppression of the statements based upon this record only because it found that “Miranda rights were never read and Defendant never waived his right to counsel” and, hence, “[i]t cannot be established that the Defendant made any statements and/or admissions freely, knowingly or voluntarily.” The court’s conclusion was erroneous because it was based upon an incorrect presumption that
 
 Miranda
 
 warnings are required any time law enforcement receives incriminating statements from a prisoner during a conversation, regardless of the circumstances surrounding that conversation. However, whether
 
 Miranda
 
 warnings are required depends upon whether a custodial interrogation takes place. Unfortunately, here the trial court failed to make any findings of fact in this regard and the record does not otherwise provide an answer.
 

 It is well established that
 
 Miranda
 
 warnings apply only to custodial interrogations.
 
 Rigterink v. State,
 
 2 So.3d 221, 242 (Fla.2009) (“The dictates of
 
 Miranda
 
 apply exclusively to
 
 ‘in-custody
 
 interrogation.’” (quoting
 
 Miranda v. Arizona,
 
 384 U.S. 436, 441-42, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)));
 
 see also Traylor v. State,
 
 596 So.2d 957, 966 (Fla.1992) (noting that the protection against self-incrimination under article I, section 9 of the Florida Constitution applies “only to statements obtained while in custody and through interrogation; they do not apply to volunteered statements initiated by the suspect or statements that are obtained in noncustodial settings or through means other than interrogation” (footnotes omitted)). Therefore, in instances where a defendant challenges the lack of
 
 Miranda
 
 warnings, the preliminary factual issues to be decided by the trial court are (1) whether the defendant was in custody and (2) whether he was interrogated.
 

 For purposes of
 
 Miranda,
 
 “[a] person is in custody if a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest.”
 
 Ramirez v. State,
 
 739 So.2d 568, 573 (Fla.1999) (citing
 
 Traylor,
 
 596 So.2d at 966 n. 16). Furthermore, the term “custodial interrogation” refers to “questioning
 
 initiated
 
 by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.”
 
 Miranda,
 
 384 U.S. at 444, 86 S.Ct. 1602 (emphasis added);
 
 see also Traylor,
 
 596 So.2d at 966 n. 17 (“Interrogation takes place ... when a person is subjected to express questions, or other words or actions, by a state agent, that a reasonable person would conclude are designed to lead to an incriminating response.”);
 
 State v. Busciglio,
 
 976 So.2d 15, 19 (Fla. 2d DCA 2008).
 

 In this case, Edenfield obviously initiated a conversation with law enforcement about his allegedly stolen property
 
 *225
 
 and the identities of people involved in drug activity, but the trial court did not address who initiated the ensuing discussions regarding the pending charges, which led to Edenfield’s incriminating statements. The trial court only noted that a factual dispute on this issue existed, but it apparently considered the resolution of this dispute unnecessary to its ruling and, therefore, did not decide whose version of those facts should be believed— Deputy Frenton’s or Edenfield’s. On a motion to suppress, the circuit court is responsible for weighing the evidence and making factual findings concerning the credibility of witnesses.
 
 Dillow v. State,
 
 884 So.2d 508, 510 (Fla. 2d DCA 2004);
 
 Brown v. State,
 
 852 So.2d 60, 61 (Fla. 4th DCA 1977). In this case, the trial court erred in not doing so because the determination of this factual dispute is the linchpin to a correct legal decision on Edenfield’s motion to suppress.
 

 In addition to having no findings of fact on the important issues discussed above, the trial court’s order implies that
 
 Miranda
 
 warnings are required
 
 any
 
 time law enforcement has a conversation with an inmate. The fact that a person is in jail, in and of itself, does not dispense with the necessity of the trial court making findings of fact regarding both prongs of the protection against self-incrimination, i.e., whether, for purposes of
 
 Miranda,
 
 the defendant is in custody and an interrogation took place. Under certain circumstances a trial court could find that even an inmate is free to terminate a conversation with law enforcement and return to his jail cell at any point during their conversation. A trial court could also find that an inmate volunteered incriminating information. Here, the trial court erred in not considering these issues. Despite the trial court’s assumption to the contrary, we can find no case law mandating a per se ministration of
 
 Miranda
 
 warnings outside the context of a custodial interrogation as that term is defined by controlling precedent.
 

 In closing, we note that if the defense pursues further suppression proceedings on remand, there are numerous cases which the parties and trial court can consider in properly evaluating whether Edenfield’s statements were obtained in violation of
 
 Miranda. See, e.g., Ahedo v. State,
 
 842 So.2d 868 (Fla. 2d DCA 2003) (holding that defendant knowingly and voluntarily waived right against self-incrimination when he requested to speak to the officer who originally read him his rights and then made incriminating statements to the officer);
 
 Larson v. State,
 
 753 So.2d 733, 734-35 (Fla. 2d DCA 2000) (finding that defendant was subject to interrogation for purposes of
 
 Miranda
 
 where the police officer made “statements that were reasonably likely to elicit an incriminating response”);
 
 Serrano v. State,
 
 15 So.3d 629 (Fla. 1st DCA 2009) (affirming denial of motion to suppress where the defendant requested a meeting with a police officer after his arrest, offered to provide information in exchange for a haircut, and there was no evidence of coercion);
 
 State v. Lebron,
 
 979 So.2d 1093, 1094 (Fla. 3d DCA 2008) (holding that officer interrogated defendant when he told the defendant, “I hope you know what kind of trouble you are in” while defendant was seated in police cafeteria because the officer’s statement referred to the underlying crime for which the defendant was in custody and invited a response about that crime);
 
 Harnanan v. State,
 
 780 So.2d 183 (Fla. 5th DCA 2001) (holding that defendant was not subjected to custodial interrogation where he initiated conversation with police officer thereby waiving his Fifth Amendment rights).
 
 See generally State v. Hunt,
 
 14 So.3d 1035, 1038-39 (Fla. 2d DCA 2009) (discussing standard for reviewing allega
 
 *226
 
 tions of
 
 Miranda
 
 violations where the defendant reinitiates communications with police officers after being read
 
 Miranda
 
 warnings and after initially invoking his right to remain silent).
 
 [5]
 

 Accordingly, we reverse the order granting suppression and remand for further proceedings in accordance with this opinion.
 

 WALLACE and LaROSE, JJ., Concur.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 . The record contains discrepancies as to the deputy's last name. He is referenced to as both "Frenti” and "Frentón.” Because the trial court and the parties on appeal referred to the deputy as "Frentón,” we use that name in this opinion.
 

 [3]
 

 . The method by which Edenfield requested to speak to an officer is unclear. He initially testífied at the hearing on the motion to suppress that he had filled out a request to see a police officer. However, he later testified that he requested to see a police officer by calling "Crime Stoppers.” The record on appeal does not contain a written request to see a police officer.
 

 [4]
 

 .In the past, Edenfield had helped law enforcement find a person who had an outstanding warrant.
 

 [5]
 

 . The record on appeal suggests that Eden-field was read
 
 Miranda
 
 warnings by a different police officer prior to the events which led to this appeal. However, this issue was not developed below and is not before this court.