PER CURIAM.
Clarence Wheeler, III, appeals his jury conviction for first-degree murder. Wheeler contends that the court erred by denying his motion to suppress his confession, given after he invoked his right to remain silent. For the reasons that follow, we agree with Wheeler and reverse and remand for a new trial.
Authorities suspected Wheeler of shooting and killing John Rivera during a drug deal on May 22, 2008. On May 30, 2008, authorities arrested Wheeler on a violation of probation warrant. After Homicide Detective Christopher Williams was informed Wheeler was in custody, Detective Williams interrogated Wheeler for thirty minutes. During the interrogation, the detective issued Miranda[1] warnings to Wheeler, they discussed Wheeler’s girlfriend, and Wheeler requested to remain silent. Due to a recording error, the thirty-minute interrogation was not recorded.
Detective Williams returned to the interrogation room and began recording a subsequent interrogation. The detective inquired if he previously issued the Miranda warnings and attempted to re-record responses he elicited before Wheeler invoked his right to silence. Shortly into the recorded interrogation, Wheeler reinvoked his right to remain silent by saying he did not want to talk any more about the situation. Detective Williams attempted to *610 press forward multiple times. Wheeler reiterated at least three times that he did not want to answer questions. At about 8:45 p.m., Detective Williams terminated the interrogation for a second time and left the interrogation room.
Wheeler remained in the interrogation room in possession of his mobile phone and attempted to call Ezekiel Harris, a mentor in the local community. Detective Williams confiscated Wheeler’s phone and, already familiar with the name and number, contacted Harris, who requested to come to the station. About two hours later, Harris came to the station, briefly conversed with Detective Williams, and asked to speak with Wheeler. Detective Williams consented and did not tell Harris what to say or do in the interview room. At around 7:00 p.m., Harris spoke with Wheeler in the interrogation room for about twenty-five minutes. Detective Williams asked to participate. Harris responded, “go ahead,” while Wheeler sat in silence.
In Wheeler’s presence, Detective Williams conversed with Harris and noted that Harris saw Wheeler in the location of the neighborhood on the day of the shooting. Detective Williams, with previous knowledge that the shooter was wearing a splint from an eyewitness’s statement, discussed Wheeler’s splint on his hand and asked Harris about it. At some point in the conversation, Detective Williams believed Wheeler wanted to talk and directed his questions toward Wheeler. At 9:45 p.m., Wheeler confessed.
After a person in custody has invoked his right to cease questioning, the admissibility of any subsequent statement depends on whether the right to remain silent was scrupulously honored. Michigan v. Mosley, 423 U.S. 96, 104, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Where the police interrogation ceased after invocation of the right to remain silent, as it did here, the analysis turns on which party — Detective Williams or Wheeler — reinitiated the dialogue. See State v. Hunt, 14 So.3d 1035, 1039 (Fla. 2d DCA 2009). To determine who reinitiated, this Court must look to whether a suspect’s question to police “evinced a willingness and a desire for a generalized discussion about the investigation [and] was not merely a necessary inquiry arising out of the incidents of the custodial relationship.” Oregon v. Bradshaw, 462 U.S. 1039, 1045-46, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). Often, it appears the party who reinitiates is the one who speaks first. See, e.g., O’Brien v. State, 56 So.3d 884, 888 (Fla. 1st DCA 2011).
Here, Wheeler did not ask a question or make a statement to the police after invoking his right to silence. Compare Pirzadeh v. State, 854 So.2d 740, 743 (Fla. 5th DCA 2003) (indicating that detective reinitiated by approaching suspect in jail after suspect invoked his Miranda rights), with Welch v. State, 992 So.2d 206, 214 (Fla.2008) (finding defendant reinitiat-ed after invoking Miranda by asking “What is going to happen to me now?” at water cooler). Unlike cases where the defendant asks a question to law enforcement, we find the custodial interrogation in this case resumed because the questions were designed to deliberately elicit an incriminating response.
Courts employ an objective test to determine whether police should know a statement is reasonably likely to evoke an incriminating response and, therefore, amount to interrogation. Rhode Island v. Innis, 446 U.S. 291, 301-02, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Here, the circumstances surrounding Detective Williams’ questions to Harris while Wheeler was in the interrogation room are those that an *611 officer should know are likely to lead to an incriminating response. Detective Williams knew that Harris saw Wheeler with a splint on his hand and saw Wheeler in the area at the time of the murder. Furthermore, Detective Williams knew that the driver who escaped and reported the incident indicated the shooter had a splint on his hand. Finally, this was the same line of questioning from which Wheeler indicated he did not want to answer further questions earlier in the day. Detective Williams’ testimony at the suppression hearing did not support any reason why Wheeler wanted to continue the interrogation other than a conclusory statement that Wheeler was reengaging.
To determine whether Wheeler’s right to remain silent was scrupulously honored after Detective Williams reinitiat-ed, we examine:
(1) whether the suspect was informed of his or her Miranda rights at the outset of each interrogation, (2) whether the police immediately ceased questioning after the suspect invoked the right, (3) whether there was a sufficient lapse of time between the invocation of the right and the resumption of questioning, (4) whether questioning resumed at a different location, and (5) whether the two rounds of questioning concerned different crimes.
Hunt, 14 So.3d at 1039 (citing Mosley, 423 U.S. at 106, 96 S.Ct. 321).
We find that the circumstances, in totality, show Wheeler’s invocation was not scrupulously honored. Detective Williams did not readminister the Miranda, warnings before the interrogation with Harris in the room. Furthermore, Detective Williams did not immediately cease questioning during the recorded interrogation after Wheeler’s request. To persuade Wheeler to continue with questioning around 3:45 p.m., Detective Williams attempted an appeal to: (1) the type of questions — yes or no; (2) whether it is wrong to answer the questions; (3) the simplicity of the questions; (4) the fact that they had previously been answered; (5) whether Wheeler was going to act like a man; and (6) whether Wheeler was mad at Detective Williams. The questioning in the present case occurred in the same location where Wheeler previously invoked — the interrogation room. The record does not indicate Wheeler spent any time anywhere other than the interrogation room for seven hours before he confessed. Furthermore, the interrogation concerned the same crime and resumed with conversations about the splint — the same line of questioning Wheeler requested to cease earlier in the day.[2]
Accordingly, we hold the trial court erred when it denied Wheeler’s motion to suppress his confession because Wheeler’s right to remain silent was not scrupulously honored and, therefore, was violated.
REVERSED and REMANDED for a new trial.
TORPY and EVANDER, JJ„ and JACOBUS, Senior Judge, concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. We note that in certain circumstances, the lapse of time between Wheeler's recorded invocation of his right to remain silent at 3:45 p.m. and Detective Williams’ reengaging at approximately 7:30 p.m. may be sufficient. However, in the present case, the other factors guide our judgment.