632 So.2d 1361 (1994)
Steven Edward STEIN, Appellant,
v.
STATE of Florida, Appellee.
No. 78460.
Supreme Court of Florida.
January 13, 1994.
Rehearing Denied March 15, 1994.
*1363 Nancy A. Daniels, Public Defender and W.C. McLain, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Richard B. Martell, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Steven Edward Stein appeals his convictions of two counts of first-degree murder and one count of armed robbery, his sentences of death for each of the murder convictions, and his sentence of life imprisonment for the armed robbery conviction. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm those convictions and sentences.
The record reflects the following facts regarding this case.[1] Stein, Marc Christmas, and Kyle White were roommates. Stein was employed as a cook at a Lem Turner Road Pizza Hut in Jacksonville, Florida. Christmas was unemployed, but was a previous employee of an Edgewood Avenue Pizza Hut in Jacksonville, Florida. White testified that, about a week before the murders, Stein and Christmas had a conversation about how to rob a Pizza Hut restaurant. During the conversation, Stein mentioned the Pizza Hut on Edgewood Avenue, and both Stein and Christmas stated that there could be no witnesses to the robbery. On the day of the murders, Christmas, Stein, Stein's girlfriend, and White were home together. About 9:30 p.m. Stein and Christmas left, taking with them Stein's .22 caliber rifle. They stated that they were going to see Christmas' father about selling him the rifle. They returned home around 11:30 to 11:45 p.m.
The next morning, Dennis Saunders and Bobby Hood were found shot to death at the Edgewood Avenue Pizza Hut and the sum of $980 was missing from the restaurant. The victims were shift supervisors of the restaurant and their bodies were found in the men's restroom. Bullet fragments and cartridge casings were recovered from the restroom area. Hood had suffered five gunshot wounds  four to the head and one to the chest. The medical examiner testified that the shots had been fired from four to six inches away and that Hood was sitting at the time he was shot. Saunders had suffered four gunshot wounds  one through the neck, one in the right shoulder, one in the chest, and one in the right thigh. The medical examiner testified that Saunders was sitting on the floor at the time the shots began and, given the position of the bullet wounds, that he was moving around during the shooting.
Ronald Burroughs was an employee of the Edgewood Avenue Pizza Hut. He testified that on the night of the murders, he left the restaurant at 11:15 p.m. When he left, Hood and Saunders were still inside the restaurant and only two customers remained at the restaurant. Burroughs later identified those two customers as Stein and Christmas. Additionally, an unpaid guest check on a table in the restaurant contained a fingerprint belonging to Christmas.
Additional testimony revealed that three expended .22 caliber casings were found at the residence of Stein and Christmas. A ballistics expert testified that the casings found at the scene and the casings found at the residence were fired from the same firearm. Additionally, Christmas's father testified that Stein and Christmas did not come to his house on the night of the murders.
After Stein and Christmas were arrested, Stein gave a statement to investigators about the crimes. Before giving that statement, Stein signed two waiver-of-rights forms. After signing the first, Stein asked to speak to an attorney and the questioning was terminated. Apparently, however, after the questioning was terminated, one of the investigators made a comment to Stein to the effect that God would forgive him for what he had done. The investigators then left Stein alone in the interview room. Several minutes later, but before Stein had seen an attorney, *1364 Stein initiated contact with the investigators by knocking on the door and stating, "I want to talk about part of it." At that time, the investigators had Stein execute the second waiver-of-rights form, on which a notation was made that Stein had initiated the conversation. Stein told the investigators that he and Christmas took approximately $900 in the robbery and that the victims were shot because the robbery "went bad." Stein never admitted, however, that he was the shooter.
Subsequently, Stein moved to suppress these statements. At the suppression hearing, Stein stated that he never made any statements to the investigators; that he had asked for an attorney three times; and that he understood his rights. The trial judge denied the motion, finding that Stein had made the statements freely and voluntarily and that Stein had initiated the conversation.
At trial, Stein was convicted as charged. At the penalty phase proceeding, the State introduced testimony that Stein was carrying a .38 caliber revolver[2] and ammunition at the time of his arrest. Stein's sister and girlfriend testified on his behalf. The jury recommended, by a ten-to-two vote, that Stein be sentenced to death for each of the two murders. The trial judge sentenced him to death for the murders and to life imprisonment for the armed robbery. In doing so, the trial judge found five aggravating circumstances: 1) previous conviction for a violent felony based on the contemporaneous murders of the two victims; (2) the homicides occurred during the commission of a robbery; (3) the homicides were committed to avoid arrest; (4) the homicides were heinous, atrocious, or cruel; and (5) the homicides were cold, calculated, and premeditated. Additionally, the trial judge found one statutory mitigating factor  no significant history of prior criminal activity.

Guilt Phase
Stein raises three issues in appealing his convictions. First, he claims that the trial judge erred in denying his motion to suppress the statements he made to investigators. In support of this claim, Stein asserts that the investigators failed to honor his request for counsel. Additionally, Stein contends that any statements made to the officers after that request were not voluntary because the comment made by one of the investigators regarding God's forgiveness constituted continued interrogation and was the type of comment that would elicit an incriminating response. Consequently, Stein maintains that his statements must be suppressed because, once a defendant asserts the right to counsel, there can be no continued interrogation or valid waiver of the defendant's rights without the actual presence of counsel.
Clearly, once an accused asks for counsel, an accused may not be subjected to further interrogation until counsel has been made available to the accused, absent initiation of further communication with law enforcement officers by the accused. Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Under the circumstances of this case, however, we find that Stein voluntarily initiated continued communication with the investigators and that the motion to suppress was properly denied. At the suppression hearing, Stein himself admitted that the brief conversation about God had no effect on his decision to talk to the investigators. Additionally, once Stein asked for an attorney, the investigators left the room; however, after the investigators left the room, Stein initiated continued further communication by knocking on the door and stating, "I want to talk about part of it." Further, before the investigators asked Stein any more questions, they again advised him of his right to an attorney. Given this record, we find that the motion was properly denied. This does not mean, however, that the investigator's comments regarding God were appropriate. Once an accused asks to speak to counsel, law enforcement officers should refrain from making any comments to an accused other than those necessary to properly process the *1365 accused through the system. Nevertheless, in this case, even were we to find that the comments did induce Stein's continued communication, given the significant amount of other incriminating evidence in this case, we would find that the admission of Stein's statements constituted harmless error. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
In his next claim, Stein contends that the trial judge erred in allowing a suppression hearing to proceed in the absence of Stein's counsel. The record reflects that both Stein and Christmas filed motions to suppress the evidence seized from their residence, but that Christmas's counsel handled the presentation of the testimony of the only witness initially called at the suppression hearing. After Christmas's counsel concluded direct examination of the witness, Stein's counsel had to leave the hearing and, consequently, waived his appearance at the remainder of the hearing. Stein, however, chose to remain until the hearing was concluded. Given these facts, Stein contends that he was left to represent himself for the remainder of the hearing and that the trial judge made no inquiry as to either Stein's desire to waive his counsel's presence or his desire to represent himself at the hearing.
The record reflects that Stein's counsel discussed the waiver of his presence with Stein and that, upon inquiry by the judge, Stein simply requested to remain at the hearing as an observer subsequent to the waiver. Given that the presentation of the testimony was being handled by Christmas's attorney, that Stein was not placed in the position of having to represent himself, and that Stein was not prejudiced by his attorney's absence, we conclude that no inquiry by the court was necessary.
In his third claim, Stein contends that the trial judge erred in failing to declare a mistrial after two witnesses made certain statements about Stein's character. During the trial, White testified that one of Christmas's robbery plans included killing a Pizza Hut manager. In so testifying, he stated that the manager was on some sort of "hit" list and that by killing him they could "kill two birds with one stone." Additionally, a statement made by a detective during a deposition in which the detective referred to Stein as a "skin head" was inadvertently read to the jury. According to Stein, these comments had no relevance to the issues at trial and prejudiced the jury by suggesting that Stein was a member of a white supremacist group. As such, Stein asserts that a mistrial should have been declared. We disagree.
The comments made by White were made in the context of his explaining Stein's and Christmas's plans in committing the crimes and how they could complete a Pizza Hut robbery without setting off the alarm system. After the comments were made, the State asked White to clarify what he meant by "hit" and White explained that he meant they would kill the manager while he was dropping a deposit off at the bank; that is, they could rob and dispose of the witness at the same time. The objectionable characterization of Stein as a "skin head" was made during the deposition in the following context:
Q. What was your purpose in meeting with [the managers of the Pizza Hut] at that time?
A. I wanted to see if they knew anyone who had dark hair who would be acquainted with a skin head or light blond headed white male.
There was no further use of this term at any time during the trial. We conclude that the comments made by White and the comment made by the detective, when read in context with other portions of the record, did not in any way become a focus of the trial and, if error, were harmless beyond a reasonable doubt.

Penalty Phase
Regarding the penalty phase portion of the trial, Stein first argues that the trial judge improperly rejected certain mitigating circumstances and improperly found certain aggravating circumstances in sentencing Stein to death.
As to the improper rejection of mitigating circumstances, Stein argues that the trial judge failed to find in mitigation that Christmas, rather than Stein, was the primary actor in the crimes at issue and that *1366 Stein was of good character. We find that the trial judge correctly rejected both of these factors in mitigation. As noted by the trial judge, no evidence was presented to support a finding that Stein merely acted as an accomplice in committing the murders, that his participation was relatively minor, or that aspects of Stein's character would mitigate in favor of his conduct in this case. In making those findings, the judge stated:
There was strong evidence indicating that Steven Edward Stein did kill or did attempt to kill Dennis Saunders and Bobby Hood. The murder weapon, a rifle, belonged to Stein. Stein and Stein alone was seen carrying the rifle before the robberymurders. At the time Stein was arrested, the box that the rifle came in was in Stein's room.
The Court finds that Steven Edward Stein clearly intended that any and all witnesses to the robbery would be killed. Stein and his co-defendant specifically discussed and planned for the elimination of all witnesses so that Stein and the co-defendant could not be identified. Stein and Christmas were the last customers at the Pizza Hut the night of the robbery-murders. Stein knew that at least one of the shift supervisors remaining at the Pizza Hut that night knew one of the Defendants, so Stein knew that if he and Christmas were going to do the robbery, they were going to have to eliminate the witnesses, as they had planned.
... .
Stein planned and discussed the robbery with the co-defendant Christmas. Stein's rifle was the murder weapon used to killed Dennis Saunders and Bobby Hood. Stein's acts in committing the robbery after he and his co-defendant discussed and planned to kill any and all witnesses demonstrated a reckless disregard for human life.
The Court finds that Steven Edward Stein was a major participant in the robbery and that his acts demonstrated a reckless disregard for human life.
The record supports these findings and, consequently, we reject Stein's argument.
Regarding the factors found in aggravation, Stein first argues that the trial judge erroneously found the aggravating circumstance of a previous conviction for a violent felony. Stein states that he had no prior criminal record and that this circumstance was improperly found by the trial judge based solely on the multiple murders in this case. We have previously held that a contemporaneous conviction of a violent felony may support the aggravating factor of prior conviction for a violent felony so long as the two crimes involved multiple victims or separate episodes. See Pardo v. State, 563 So.2d 77 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2043, 114 L.Ed.2d 127 (1991). Consequently, we reject this claim.
Next, Stein contends that the trial judge erroneously found both that the murders were committed to avoid arrest and that the murders were cold, calculated, and premeditated because these two aggravating factors were based on the finding that the murders were committed to eliminate witnesses. Although Stein admits that either aggravating circumstance may be proper under the circumstances of this case, Stein argues that the trial judge could not find both based on the same factual circumstances.
We conclude that both of these aggravating circumstances were properly found by the trial judge. The aggravating circumstance that the murders were committed to avoid arrest focuses on a defendant's motivation for a crime. For instance, in this case, the record clearly reflects that Stein and Christmas planned to eliminate any witnesses to avoid arrest. Consequently, that circumstance was proper under these circumstances. The aggravating circumstance of cold, calculated, and premeditated focuses on the manner in which the crime was executed, i.e., the advance procurement of the murder weapon, lack of resistance or provocation, the appearance of a killing carried out as a matter of course. So long as each aggravator is supported by such distinct facts, we hold that no impermissible doubling of aggravating factors has occurred. See, e.g., Hodges v. State, 595 So.2d 929 (Fla.), rev'd on other grounds, ___ U.S. ___, 113 S.Ct. 33, 121 L.Ed.2d 6 (1992).
*1367 In his final claim regarding the trial judge's findings as to factors in aggravation, Stein claims that the trial judge erred in finding that the murders were heinous, atrocious, or cruel. Stein also claims that the trial judge gave an unconstitutionally vague jury instruction on this factor. The record reflects that the shooting deaths in this case were nearly instantaneous. Moreover, no evidence was presented to demonstrate any intent on Stein's part to inflict a high degree of pain or to otherwise torture the victims. We have previously held that multiple gunshots administered within minutes do not satisfy the requirements for the aggravating factor of heinous, atrocious, and cruel. Amoros v. State, 531 So.2d 1256 (Fla. 1988); Lewis v. State, 377 So.2d 640 (Fla. 1979). As we recently noted in Bonifay v. State, 626 So.2d 1310, 1313 (Fla. 1993), "The fact that the victim begged for his life or that there were multiple gunshots is an inadequate basis to find this aggravating factor absent evidence that [the defendant] intended to cause the victim unnecessary and prolonged suffering." Because we find no evidence in this record that Stein intended to cause the victims unnecessary and prolonged suffering, we find that the trial judge erroneously found that the murders were heinous, atrocious, or cruel.
Nevertheless, we conclude that the trial judge properly imposed the death penalty given the four other aggravating factors present in this case. When weighing those four aggravating circumstances against the one mitigating circumstance of no significant prior criminal record, no likelihood exists that the sentence in this case would have been different from that originally imposed. Consequently, we must find that the trial judge's reliance on the invalid aggravator was harmless. Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). See also Martin v. Singletary, 599 So.2d 119 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 1926, 118 L.Ed.2d 534 (1992); Watts v. State, 593 So.2d 198 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 3006, 120 L.Ed.2d 881 (1992). In making this ruling, we note that the jury instruction given in this case on whether the murders were heinous, atrocious, or cruel was found to be constitutional by this Court in Hall v. State, 614 So.2d 473 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 109, 126 L.Ed.2d 74 (1993).
Stein next argues that the trial judge erroneously admitted testimony during the penalty phase that Stein was carrying a concealed weapon at the time of his arrest and that the carrying of that weapon was a felony offense. Stein argues that, absent an actual conviction, admission of a prior crime or arrest is inadmissible. Stein failed to object to the admission of this testimony. Consequently, this claim is procedurally barred. Moreover, even if this issue had been properly preserved for appeal, the record reflects that this evidence was properly submitted to rebut the mitigation of no significant criminal history.
Finally, Stein contends that the trial judge erred in denying Stein's request for a mistrial after the prosecutor made certain statements to the jury in his closing argument. Specifically, Stein claims that the prosecutor sought to invoke sympathy for the victims by stating to the jury that victim Saunders was married and the father of a child. We find that these brief humanizing remarks do not constitute grounds for reversal and that, if improper, they were harmless beyond a reasonable doubt. DiGuilio. See also Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (in the majority of cases, victim impact evidence serves entirely legitimate purposes).
Accordingly, we affirm Steven Edward Stein's convictions of two first-degree murders and of armed robbery and his sentences of death for each of the murder convictions and life imprisonment for the armed robbery conviction.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Stein's codefendant, Marc Christmas, was tried and convicted separately. See Christmas v. State, 632 So.2d 1368 (Fla. 1994). The facts in this case are almost identical to the facts presented in Christmas's case.
[2] This revolver was not involved in the murders at issue. The State introduced the evidence that Stein was carrying this concealed weapon at the time of his arrest to rebut the mitigating factor of no significant criminal history.