632 So.2d 1368 (1994)
Marc CHRISTMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 79044.
Supreme Court of Florida.
January 13, 1994.
Teresa J. Sopp of Sasser & Sopp, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard B. Martell and Mark C. Menser, Asst. Attys. Gen., Tallahassee, for appellee.
*1369 PER CURIAM.
Marc Christmas appeals his convictions of two counts of first-degree murder and one count of armed robbery, his sentences of death for each of the murder convictions, and his sentence of life imprisonment for the armed robbery conviction. The death sentences were imposed by the trial judge despite the jury's recommendation of life imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm Christmas's convictions and sentence of life imprisonment; however, we reverse the death sentences.
The record reflects the following facts regarding this case.[1] Christmas, Steven Stein, and Kyle White were roommates. Stein was employed as a cook at a Lem Turner Road Pizza Hut in Jacksonville, Florida. Christmas was unemployed, but was a previous employee of the Edgewood Avenue Pizza Hut in Jacksonville, Florida. White testified that, about a week before the murders, Stein and Christmas had a conversation about how to rob a Pizza Hut restaurant. During the conversation, the Pizza Hut on Edgewood Avenue was mentioned, and both Stein and Christmas stated that there could be no witnesses to the robbery. On the day of the murders, Christmas, Stein, Stein's girlfriend, and White were home together. About 9:30 p.m. Christmas and Stein left, taking with them Stein's .22 caliber rifle. They stated that they were going to see Christmas's father about selling him the rifle. They returned home around 11:30 to 11:45 p.m.
The next morning, Dennis Saunders and Bobby Hood were found shot to death at the Edgewood Avenue Pizza Hut and the sum of $980 was missing from the restaurant. The victims were shift supervisors of the restaurant and their bodies were found in the men's restroom. Bullet fragments and cartridge casings were recovered from the restroom area. Hood had suffered five gunshot wounds  found to the head and one to the chest. The medical examiner testified that the shots had been fired from four to six inches away and that Hood was sitting at the time he was shot. Saunders had suffered four gunshot wounds  one through the neck, one in the right shoulder, one in the chest, and one in the right thigh. The medical examiner testified that Saunders was sitting on the floor at the time the shots began and, given the position of the bullet wounds, that he was moving around during the shooting.
Ronald Burroughs was an employee of the Edgewood Avenue Pizza Hut. He testified that, on the night of the murders, he left the restaurant at 11:15 p.m. When he left, Hood and Saunders were still inside the restaurant and only two customers remained at the restaurant. Burroughs later identified those two customers as Stein and Christmas. Additionally, an unpaid guest check on a table in the restaurant contained a fingerprint belonging to Christmas. Testimony also revealed that three expended .22 caliber casings were found at the residence of Stein and Christmas. A ballistics expert testified that the casings found at the scene and the casings found at the residence were fired from the same firearm. Additionally, Christmas's father testified that Stein and Christmas did not come to his house on the night of the murders.
During the course of the trial, Christmas made certain statements to two part-time bailiffs about the crimes. Apparently, Christmas told the bailiffs that the testimony presented was "bullshit." After some discussion, one of the bailiffs asked Christmas who shot the victims. Christmas told the bailiff that Stein had killed the victims, but that if Stein had not killed the victims, he would have done it, and that "I'm just as guilty as he is." Christmas then described how the crimes had occurred, including the fact that he held a gun on the victims as they were shot by Stein. Subsequently, Christmas filed a motion to suppress these statements. The trial judge denied the motion, finding that the bailiffs to whom Christmas made the statements were not law enforcement officers, that the statements had been freely and voluntarily made, and that Christmas had initiated the conversation.
*1370 At trial, Christmas was convicted as charged. At the penalty phase proceeding, the State introduced no evidence, relying instead on the evidence presented during the guilt phase to support the factors in aggravation. Christmas presented fifteen witnesses on his behalf. The witnesses indicated that Christmas suffered from a personality disorder (dependent personality), that he was very young (twenty-one) at the time of the murders, that he was a follower rather than a leader, that he had been involved in a number of burglaries and had served time in prison, and that he was easily influenced.
The jury recommended that Christmas be sentenced to life imprisonment for the two murders. The trial judge, however, overrode the jury's recommendation and imposed a death sentence for each murder and a sentence of life imprisonment for the armed robbery. In doing so, the trial court found six aggravating circumstances: 1) previous conviction for a violent felony based on the contemporaneous murders of the two victims; (2) the homicides occurred during the commission of a kidnapping; (3) the homicides were committed to avoid arrest; (4) the homicides were committed for financial gain; (5) the homicides were especially heinous, atrocious, or cruel; and (6) the homicides were cold, calculated, and premeditated. The judge found no factors in mitigation.

Guilt Phase
Christmas raises only one issue as to his convictions, claiming that the trial judge erred in denying his motion to suppress. In support of that contention, Christmas asserts that the bailiffs were law enforcement agents who wrongfully elicited the statements made by Christmas without first giving him Miranda[2] warnings. The State, however, argues that the bailiffs were unsworn civilians who had no arrest powers and that Christmas initiated contact with the bailiffs, without prompting, by stating that the testimony was "bullshit." The State additionally notes that the trial judge specifically found that Christmas was not interrogated in any manner, that Christmas initiated the conversation, and that the statements were freely and voluntarily made. Consequently, according to the State, Miranda warnings were unnecessary because such warnings must be given only in situations where a defendant is interrogated or coerced. In making this argument, the State cites Illinois v. Perkins, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), in which the United States Supreme Court held that Miranda warnings are not always required in custody situations where a defendant converses with a government agent.
First, we find that the trial judge erred in ruling that the bailiffs were not law enforcement officers for the purpose of determining whether Miranda warnings must be given before questioning. The bailiffs were paid employees of the Jacksonville Sheriff's Department; they were hired to maintain security in the courtroom and to maintain security over prisoners who were brought to and from the detention center to appear in court; and they wore identification badges labeled "Jacksonville Sheriff's Office." The simple fact that the bailiffs were not sworn deputies and lacked arrest powers is insufficient to negate their status as "officers of the state."
Whether Miranda warnings were required under the circumstances of this case is a much closer question given the evidence that Christmas initiated the conversation with the bailiffs. It is undisputed that the question regarding who did the shooting in this case was initiated by one of the bailiffs as a result of Christmas's previous statements. Miranda and its progeny require that Miranda warnings be given whenever custodial interrogation takes place. This is because of the coercive conditions that are inherent when suspects are questioned by "captors, who appear to control the suspect's fate, [and who] may create mutually reinforcing pressures that the Court has assumed will weaken the suspect's will." Perkins, 496 U.S. at 297, 110 S.Ct. at 2397. When, however, a defendant voluntarily initiates a conversation with law enforcement officers in which a defendant provides information about that defendant's case, Miranda warnings are not required. Although the bailiff's question was *1371 probably improper, under the circumstances we cannot say that Miranda warnings were required. Christmas voluntarily initiated the conversation at issue and the bailiff's question was not asked as the result of circumstances in which mutually reinforcing pressures were present so as to weaken Christmas's will. In any event, we find that the admission of Christmas's statements constituted harmless error beyond a reasonable doubt given the significant amount of other incriminating evidence in this case. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Consequently, we affirm his convictions.

Penalty Phase
Regarding the penalty phase proceeding, Christmas raises two issues: (1) the trial judge erred in finding certain aggravating circumstances, and (2) the trial judge erred in overriding the jury's recommendation of life in sentencing Christmas to death.
As to the factors found in aggravation, Christmas argues that: (1) the trial judge erroneously found the aggravating circumstance of previous conviction for a violent felony because that finding was based solely on the multiple murders in this case; (2) the trial judge erroneously found both that the murders were committed to avoid arrest and that the murders were cold, calculated, and premeditated because these two aggravating factors were based on the finding that the murders were committed to eliminate witnesses; and (3) the trial judge erred in finding that the murders were heinous, atrocious, or cruel. These three arguments are identical to those raised and disposed of in Stein v. State, 632 So.2d 1361 (Fla. 1994). In Stein, we disposed of the first two issues adversely to Christmas's contentions here. For the reasons expressed in Stein, however, we find that the trial judge erroneously found that the killings were heinous, atrocious, or cruel.
Next, we address Christmas's claim that the trial judge erred in overriding the jury's recommendation of life imprisonment. Under Florida's statutory death penalty scheme, a jury's recommendation of life imprisonment must be given great weight. Only when the facts suggesting a sentence of death are so clear and convincing that "virtually no reasonable person could differ" may a judge overrule a jury's recommendation of life imprisonment and impose the death penalty. Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). If facts are evident from the record on which a jury could rely in recommending life imprisonment, then a trial judge must follow that recommendation. Downs v. State, 574 So.2d 1095 (Fla. 1991).
In this case, the trial judge found no factors in mitigation even though a significant amount of mitigating evidence was presented upon which a jury could have relied in recommending a sentence of life imprisonment. For instance, among other evidence, testimony was presented that Christmas was easily led by and influenced by others; that he could not have committed this crime alone; and that it was Stein, not Christmas, who actually killed the victims.
The State asserts that the trial judge correctly sentenced Christmas to death because the jury's recommendation was not reasonable and would have led to disparate sentences given that Stein was sentenced to death in a separate trial. See, e.g., Miller v. State, 415 So.2d 1262 (Fla. 1982) (where defendants tried separately and one received death and the other life, the trial judge, finding no significant difference in the defendants' participation in the crimes, properly overrode jury's recommendation of life), cert. denied, 459 U.S. 1158, 103 S.Ct. 802, 74 L.Ed.2d 1005 (1983). Moreover, the State claims that the mitigation in this case "pales in significance" when weighed against the strong aggravating circumstances.
In Miller, we did find that the trial judge properly overrode the jury's recommendation of life imprisonment. In that case, we specifically found that the Tedder standard had been met because virtually no reasonable person could differ on the appropriateness of the death penalty under the circumstances. Consequently, we found that the disparity in the recommended sentences was not warranted. In this case, however, we find that the Tedder standard has not been met given that evidence exists in this record upon which a jury could have recommended life imprisonment. We disagree with the State's contention that the mitigation in this case *1372 "pales in significance" against the strong aggravating circumstances; especially given that the trial judge erroneously found that the killings were heinous, atrocious, and cruel. Moreover, we find no disparity in imposing a sentence of death on Stein but a sentence of life imprisonment on Christmas. Fifteen witnesses testified on Christmas's behalf and presented a number of factors to be considered in mitigation. In Stein's case almost no mitigating evidence was submitted on Stein's behalf. As such, we hold that a rational basis existed upon which a jury could distinguish between recommending life imprisonment for Christmas but death for Stein. Under these circumstances, we find that the trial court erred in overriding the jury's recommendation.
Accordingly, we affirm Marc Christmas's convictions of two first-degree murders and of armed robbery and his sentence of life imprisonment for the armed robbery conviction; however, we reduce his sentences for the two first-degree murder convictions from death to life imprisonment without the possibility of parole for twenty-five years for each murder conviction, such life sentences to be served consecutively.[3]
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Christmas's codefendant, Steven Stein, was tried and convicted separately. See Stein v. State, 632 So.2d 1361 (Fla. 1994). The facts in this case are almost identical to the facts presented in Stein's case.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] In his sentencing order, the trial judge stated that, should an appellate court set aside the death sentences imposed in this case, the alternatively imposed sentences were to run consecutively.