WARNER, J.
Appellant challenges his conviction for armed sexual battery on the grounds that the trial court erred in denying his motion to suppress incriminating statements that he made to police during questioning. He claims that when he made a request for an attorney, questioning should have stopped. In addition, he claims that he was entitled to know the charges against him, and the officers did not provide that information during questioning. We conclude that the investigating officers did not violate appellant’s Miranda[1] rights. We affirm his conviction.
Officers investigating a “cold case” of sexual battery from 1989, where the victim was raped by an assailant brandishing a knife, received information in 2010 which matched appellant to DNA evidence obtained from the crime scene. Detectives obtained an arrest warrant and a search *908 warrant for the defendant/appellant, John McKenzie.
The detectives arrived at McKenzie’s place of business and asked that he accompany them to the police station, which he did voluntarily. When the officers approached him, they did not arrest him, and they did not put him in handcuffs or take his wallet or cell phone from him. At the station, the lead detective told him they wanted to ask him some questions. McKenzie said he thought he was under arrest for something. The officers stated that they wanted to ask him some questions, so they read him his Miranda rights. When they read him his right to have an attorney present, the following exchange occurred:
[Detective 1]: You have the right to the presence and representation of a lawyer of your choice before you make any statements or answer any questions. Do you understand that?
Mr. McKenzie: I think I’d like a lawyer. [Detective 1]: Okay.
Mr. McKenzie: Just go ahead and tell me what I’m here for.
[[Image here]]
[Detective 2]: We’re going to explain everything to you. But if you want to speak to an attorney then that is your decision. If you want to speak to an attorney then we are not allowed to talk to you anymore.
Mr. McKenzie: Can you at least tell me what you want? I mean I have no problem cooperating.
The detective again instructed McKenzie regarding his Miranda right to an attorney, to which he replied, “I think I’d like a lawyer, because you won’t tell me what you want.” The detectives continued reading him the remainder of his rights, asking him if he understood all of them, which he responded that he did. At the end, the detectives said:
[Detective 1]: Do you understand these rights as I’ve read them to you and agree to speak with us?
Mr. McKenzie: I’ve got doubts until you tell me why I’m here.
[Detective 2]: So are you willing to talk to us or not, that’s not what you’re saying.
Mr. McKenzie: I agree, sir.
The detectives then started inquiring about his activities in 1989, and McKenzie again tried to find out why he was being interrogated. The officers then mentioned a burglary, and after continuing to be vague about the incident, he again said he thought he wanted a lawyer because he didn’t know what the officers wanted.
[Detective 2]: I’m going to eventually tell you, but you’re bringing up the lawyer issue again and I don’t want to — I don’t want to force you to—
Mr. McKenzie: I’m willing to talk to you—
[Detective 2]: (Unintelligible)
Mr. McKenzie: You guys come in in full SWAT and you took me out of my — and I think I’m under arrest. Am I under arrest?
[Detective 2]: Well, I’m not going to lie to you. I mean, I have probable cause to arrest you.
Mr. McKenzie: Okay.
[[Image here]]
[Detective 2]: I’m asking you, do you want to continue this conversation with you, what is it that you want to do? Mr. McKenzie: I would like to request an attorney. I don’t know why you’re holding me here.
Prior to this last request for an attorney, McKenzie admitted to the detectives that he worked for a company that man *909 aged properties in the area of the condominium where the crime occurred; that he did not have any relatives or friends who lived in the area of the crime; and, that he had never been in the condominium in which the victim was assaulted.
The state stipulated that the statements made after the last point that McKenzie said he would like a lawyer were inadmissible. After the state charged appellant with the crime, he moved to suppress his statements made prior to that time. He claimed that the detectives were required to cease questioning upon his first request for a lawyer. In addition, he asked the detectives what he was being questioned for, and they refused to answer. In denying the motion, the trial court- determined that the request for a lawyer was actually equivocal:
I think what you’re watching is a cat and mouse game on both sides....
The police clearly were in the process of arresting Mr. McKenzie.... I’ll find that the conduct and the answers to the question of the police would leave a reasonable person in question as to whether or not he was being arrested. And so, Mr. McKenzie, it appears to me, and I find was participating in this dialogue to try to figure out what the police knew or didn’t know, and he wanted to hear some more from the police.
It was certainly reasonable for him to ask am I under arrest? But I agree with the State’s characterization of that as that’s not a question about the invocation of rights as viewed by Anderson or Almeida ....
And I’ll find that Mr. McKenzie’s response or comments about well, maybe I should get an attorney were equivocal. And even if not equivocal, he would rein-itiate a dialogue once it seemed that the stop would happen. There’s a couple of times on the tape where he said something about a lawyer. Everybody stops, and then McKenzie, himself, is the one that is not reinitiating dialogue between them.
So throughout that process, I don’t think that there was an unequivocal invocation of a right to an attorney. And even if so, it was McKenzie that reiniti-ated dialogue.
At trial the detectives testified to the statement given by McKenzie, over renewed objection based upon violation of Miranda. A forensic expert testified that McKenzie’s DNA matched the DNA from the semen taken from the victim. The jury convicted McKenzie of sexual battery while armed with a deadly weapon, and the court sentenced him to life in prison. He appeals, claiming that the court erred in denying his motion to suppress.
On appeal, the trial court’s findings of fact are given deference, but its application of the law to those facts is reviewed de novo. See State v. Glatzmayer, 789 So.2d 297, 301 (Fla.2001).
Under the well-settled principles of Miranda, once a suspect unequivocally invokes the right to counsel, all interrogation must cease. Miranda, 384 U.S. at 473-74, 86 S.Ct. at 1627-28. Where, however, the invocation is equivocal, police do not have a duty to stop custodial questioning. See State v. Owen, 696 So.2d 715, 717-18 (Fla.1997). Owen adopted the reasoning of Davis v. United States, 512 U.S. 452, 462, 114 S.Ct. 2350, 2357, 129 L.Ed.2d 362 (1994), in which the Court found the statement, “Maybe I should talk to a lawyer,” to be an equivocal request for counsel which did not require the police to cease questioning the suspect.
After making an unequivocal request for counsel, the police may not reini-tiate interrogation until the suspect has counsel, “although the suspect is free to *910 volunteer a statement to police on his or her own initiative at any time on any subject in the absence of counsel” and thus waive the invocation of his right. Traylor v. State, 596 So.2d 957, 966 (Fla.1992). Reinitiating contact may be in the form of a question to the interrogating detectives. In Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the Court dealt with what constituted reinitiation of contact after a suspect invoked his right to counsel and officers ceased interrogation. In that case the suspect reiniti-ated contact by asking the officers, “Well, what is going to happen to me now?” Id. at 1045, 103 S.Ct. 2830. In determining that the suspect had waived his Miranda right, the Court explained:
There can be no doubt in this case that in asking, “Well, what is going to happen to me now?”, respondent “initiated” further conversation in the ordinary dictionary sense of that word. While we doubt that it would be desirable to build a superstructure of legal refinements around the word “initiate” in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to “initiate” any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a telephone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally “initiate” a conversation in the sense in which that word was used in Edwards [v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) ].
Although ambiguous, the respondent’s question in this case as to what was going to happen to him evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship. It could reasonably have been interpreted by the officers as relating generally to the investigation. That the police officer so understood it is apparent from the fact that he immediately reminded the accused that “you do not have to talk to me,” and only after the accused told him that he “understood” did they have a generalized investigation.
Id. at 1045-46, 103 S.Ct. 2830 (plurality opinion) (citations omitted). See also Francis v. State, 808 So.2d 110 (Fla.2001).
In this case, the trial court found that McKenzie’s requests for counsel were equivocal. Each time McKenzie said he thought he would like to talk to a lawyer, the officers attempted to determine whether McKenzie wanted to talk or await the arrival of an attorney. The detectives stopped questioning after each request, but each time McKenzie then asked a question directed to the substance of the interrogation, trying to find out the reason he was there. The trial court found that both the detectives and McKenzie were playing a “cat and mouse game.” The fact that McKenzie asked questions about why he was there forms part of the totality of the circumstances which make the request for counsel equivocal.
This case is similar to Bradshaw, where the suspect was trying to obtain generalized information when, after invoking his right to an attorney, he asked the question, “Well, what is going to happen to me now?” 462 U.S. at 1045, 103 S.Ct. 2830. Consistent with Bradshaw’s treatment of the question as a waiver of his right to an attorney, we also agree that the officers in this case could interpret McKenzie’s ask *911 ing about the charges against him as reini-tiating the conversation. Based upon our deference to the trial court’s factual determinations, the court did not err in denying the motion to suppress on this ground.
McKenzie also contends that the court should have suppressed his statement because the detectives would not answer his repeated questions as to what he was being arrested for or why they were interrogating him. He claims that this was a violation of Almeida v. State, 737 So.2d 520 (Fla.1999). In Almeida, the police began to give Almeida his Miranda warnings, asking him whether he would speak to them without an attorney present. He responded, “Well, what good is'an attorney going to do?” 737 So.2d at 522. Instead of answering that question, the officer continued questioning. Our supreme court concluded that if a defendant asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to givé a simple and straightforward answer. Id. at 525.
Almeida involved a suspect’s question regarding his Miranda rights. In requiring officers to answer questions regarding a defendant’s Miranda rights, the court acted in order to confirm the voluntariness of any statements by assuring that a defendant was properly informed of his rights. Miranda does not include a requirement that the police immediately instruct the defendant that they have a warrant for his arrest or that they inform a suspect of the charges upon which they intend to interrogate him. As the trial court noted in ruling on this issue, the question McKenzie kept asking was not a question about the invocation of rights to which Almeida applied.
That McKenzie did not know the crime for which he was' being interrogated does not show that his statements were coerced and thus involuntarily. In Colorado v. Spring, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), the Supreme Court addressed whether a waiver of a suspect’s Fifth Amendment right to counsel was voluntary when the police did not tell him of the crimes about which they intended to conduct the interrogation. The Court held that the failure did not amount to a violation of Miranda:
His allegation that the police .failed to supply him with certain information does not relate to any of the traditional indicia of coercion: “the duration and conditions of detention ..., the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance and self-control.” ... Absent evidence that Spring’s “will [was] overborne and his capacity for self-determination critically impaired” because of coercive police conduct, ... his waiver of his Fifth Amendment privilege was voluntary under this Court’s decision in Miranda.
Id. at 574 (citations omitted).
Barger v. State, 923 So.2d 597 (Fla. 5th DCA 2006), applied Colorado v. Spring in similar circumstances to this case. The suspect was arrested in connection with a sexual battery and robbery. When he was brought in for interrogation and read his Miranda rights, he told the officers, “I want to know what I’m being charged with.” 923 So.2d at 599. The officers then asked him whether he would speak without an attorney present, and he agreed to speak. The trial court denied a motion to suppress his incriminating statements. On appeal, he contended that his question to the officers required a response pursuant to the dictates of Almei-da. The court disagreed, concluding that the question “was not a prefatory question concerning Barger’s constitutional rights. Therefore, the officers were not required to answer the question before continuing the interview.” 923 So.2d at 602.
*912 We therefore hold, consistent with Colorado v. Spring and Barger; that Al-meida does not require the interrogating officer to answer a question relating to the substance of the interrogation. It only requires the officers to answer questions related to the suspect’s constitutional rights so that the suspect can make a fully informed decision as to whether to waive those rights, thus making any confession voluntary. In this case, the officers did not fail to inform McKenzie of his rights or refuse to answer any question regarding them. We affirm the trial court’s denial of the motion to suppress.
In any event, even if any of the statements should have been suppressed as a violation of appellant’s right to counsel, the only statements McKenzie made consisted of his admission that he worked for a property management company in Boca Raton and managed properties in the general area during the years around when the crime occurred, but that he had never entered any of the properties and was not involved with any properties around the victim’s condominium. These were not in-culpatory, although they did place him the area around the time of the offense. However, this same information regarding his location and employment twenty years ago also came in through the testimony of the stepfather of McKenzie. Thus, the information was cumulative. In addition, the DNA evidence match to McKenzie was one in 10.8 quintillion. We conclude that the admission of McKenzie’s statements was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).

Affirmed.

CIKLIN and LEVINE, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).