TAYLOR, J.
Winston Calder appeals his conviction of first degree murder, arguing that the trial court erred in denying his motion to suppress the statements he made to police during a videotaped interrogation after he had invoked his right to counsel. Because the police failed to scrupulously honor Calder’s invocation of his rights, and because the totality of the circumstances shows that Calder’s reinitiation of the interrogation was nothing more than the product of improper police conduct, we reverse the denial of his motion to suppress and remand for a new trial.
On January 20, 2008, during an argument in which his girlfriend, Georgia Lee, tried to remove him from their apartment, Calder shot and killed Lee. Police arrested Calder the following day. After asking Calder some preliminary questions about his background, Detective Sessions advised Calder of his Miranda rights. When the *1028 detective asked Calder if he understood the rights he read to him, the following exchange occurred:
Calder: I would prefer a lawyer.
Detective: You would prefer to have a lawyer?
Calder: Yeah.
Detective: Okay. You have a lawyer?
Calder: I can’t afford a lawyer, number four.
Detective: Four says if you cannot afford a lawyer one will be appointed to represent you, in other words, at no cost to you.
Calder: Yeah. When can I get that done?
Detective: When can you get that done?
Calder: Four, present a lawyer. You know, I want to know about those two, number three and number four.
Detective: Number three just simply means at any point in time during the interview if you wanted to have a lawyer present you would be allowed to have that. And number four means if you can’t afford one, one will be appointed to represent you at no cost to yourself. In other words, it would be free of charge. If you couldn’t afford it, that’s what that basically means.
Now, the only thing is at that point in time I’m not gonna be able to get your side of the story and I’m not gonna be able to present your side of the story to the State Attorney’s office.
[[Image here]]
Detective: Are you willing to give your side of the story without a lawyer present, yes or no?
Calder: No, I want to feel the comfortable level.
[[Image here]]
Detective: In other words, you want to tell your side of the story, however you will feel more comfortable having a lawyer present regardless of what happened?
Calder: Yes.
[[Image here]]
Detective: So you saying you want to have a lawyer present? I can’t talk to you anymore, do you understand that?
Calder: Yeah.
[[Image here]]
Detective: Let me ask you this, would you feel more comfortable if the conversation we had was tape recorded ... ?
Calder: Well a lawyer present to me—
Detective: ... But the thing is I can’t tape record a conversation with you without you first of all agreeing to speak to me without a lawyer being present. Do you understand?
Calder: I feel comfortable going to a lawyer.
Detective: You feel better having a lawyer?
Calder: Yeah.
Detective: Not a problem we can certainly do that. Okay, that is not a problem at all.
Calder: I feel more comfortable like that.
The detective told Calder that it was his legal right to have an attorney, but before leaving him alone in the interrogation room, the detective said to Calder:
[I]f you do change your mind and you do want to talk to me about your side of the story, okay, what I need you to do is — knock on the door but knock kind of loud, just knock on it kind of loud, I’ll come back in and then if you say you know what, Detective Sessions, I really, it really would make me feel better if I got the opportunity to give my side of the story, talk about what happened on Saturday, I know *1029 what happened, okay? I know that it’s very difficult for you and it’s going to be tough for you to sleep because the bottom line is you been through a tough situation and nobody wants to be in your shoes, obviously, but at the same time one of the things that makes somebody feel a lot better is if they get the opportunity to get things off of their chest, it kind of clears their mind, it clears their conscious [sic] and it makes them feel better, you know.
While Calder was alone in the interrogation room, he cried for several minutes. Less than ten minutes after the detective left Calder alone in the room, Calder opened the door and asked to speak to the detective. The detective returned and, after he administered Miranda warnings, Calder signed a waiver. Soon thereafter, Calder confessed to firing the fatal shot that killed Lee. He claimed that the shooting was accidental.
The trial court held a hearing on Calder’s motion to suppress his statements. The court found that Calder unequivocally invoked his right to counsel when he told Detective Sessions that he would feel more comfortable with a lawyer. The court further found that the detective ceased interrogating Calder after he invoked his right to counsel, and that Calder initiated further conversation with the detective. After considering the totality of circumstances surrounding the interrogation, the trial court found that Calder’s decision to waive his right to counsel and give a statement to the detective was made knowingly, intelligently, and voluntarily. Based on those findings and conclusions of law, the trial court denied Calder’s motion to suppress his statements.
Calder argues that the police obtained his confession in violation of his Miranda rights. He acknowledges that he initiated further discussions with the police after invoking his right to counsel, but contends that his subsequent waiver was not knowingly and voluntarily made. Instead, he contends that the waiver was the product of the detective’s failure to scrupulously honor his right to counsel and to remain silent after he invoked his rights. He argues that the detective’s persistent attempts to persuade him to “tell his side of the story” amounted to improper interrogation that vitiated the voluntariness of his subsequent waiver.[1]
“A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Jackson v. State, 18 So.3d 1016, 1027 (Fla.2009); State v. Triplett, 82 So.3d 860, 863 (Fla. 4th DCA 2011). Although an appellate court will defer to the trial court’s findings of fact if they are supported by competent, substantial evidence, the appellate court will review de novo the trial court’s application of the law to the facts; it will independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fifth Amendment. Cuervo v. State, 967 So.2d 155, 160 (Fla.2007); State v. Glatzmayer, 789 So.2d 297, 301 (Fla.2001); Pierre v. State, 22 So.3d 759, 765 (Fla. 4th DCA 2009).
Both the Fifth Amendment to the United States Constitution and Article I, section 9 of the Florida Constitution “pro *1030 vide that persons shall not be ‘compelled’ to be witnesses against themselves in any criminal matter.” Moss v. State, 60 So.3d 540, 542 (Fla. 4th DCA 2011) (quoting Ross v. State, 45 So.3d 403, 412 (Fla.2010)). “To give effect to the Fifth Amendment right against self-incrimination, an accused person has the right to have counsel present during a custodial interrogation, and police must clearly advise the accused of that right.” Id. (citing Miranda v. Arizona, 384 U.S. 436, 467-72, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).
“Under the well-settled principles of Miranda, once a suspect unequivocally invokes the right to counsel, all interrogation must cease.” McKenzie v. State, 125 So.3d 906, 38 Fla. L. Weekly D898, 2013 WL 1748624 (Fla. 4th DCA Apr.24, 2013) (citing Miranda, 384 U.S. at 473-74, 86 S.Ct. 1602). The suspect “ ‘is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.’ ” Moss, 60 So.3d at 542-43 (quoting Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)).
“[T]he term ‘interrogation’ under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.” Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); Black v. State, 59 So.3d 340, 345 (Fla. 4th DCA 2011).
When an accused invokes his right to counsel, “ ‘... courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.’ ” Moss, 60 So.3d at 544 (quoting Smith v. Illinois, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984)); see also Sapp v. State, 690 So.2d 581, 584 (Fla.1997) (“[O]nce an individual has invoked the Miranda right to counsel, a valid waiver of this right can be found only if the individual is the one responsible for reinitiating contact with the police.”); Black, 59 So.3d at 346.
Contrary to the state’s argument that Calder’s invocation of his right to counsel was equivocal, the trial court correctly determined that Calder’s statement to the detective that he would “feel comfortable going to a lawyer” was an unequivocal invocation of his right to counsel. Moreover, the record shows that Calder made several statements during the interview that clearly invoked his right to counsel. As we commented in Moss, “it is hard to imagine more unequivocal statements.” 60 So.3d at 543.
The record reveals that after Calder made his unequivocal request for counsel, the detective did not cease questioning him. Instead, he continued talking to Calder in an effort to coax him into speaking without counsel. The detective kept reminding Calder that this was his opportunity to present his side of the story and that doing so would benefit him. He further suggested that Calder might feel more comfortable telling his side of the story if he recorded the statement. He told Calder, however, that the only way he could record the interview was if Calder agreed to speak without a lawyer. The detective also told Calder that he would feel better and be able to sleep better at night if he got some things off his conscience.
These statements constituted interrogation because the detective should have *1031 known that they were “reasonably likely to elicit an incriminating response.” Innis, 446 U.S. at 301, 100 S.Ct. 1682; see also Cuervo, 967 So.2d at 164 (remarks by police to defendant that he still had an opportunity to tell “his side of the story” amounted to interrogation because the officers could reasonably anticipate they would elicit an incriminating response); Black, 59 So.3d at 346 (detective was in violation of Miranda by continuing to ask defendant whether he wanted to talk to him about the crimes after the defendant had clearly invoked his right to counsel); Gilbert v. State, 104 So.3d 1123, 1125 (Fla. 4th DCA 2012) (stating that “almost immediately after [the defendant] invoked his right to counsel, the detectives engaged in interrogation by telling the defendant that they were trying to ‘protect’ him and encouraging him to tell his ‘side of the story’ ”). Based on similar statements the detective made in this case, we conclude that the detective did not cease questioning and thus failed to scrupulously honor Calder’s invocation of his right to counsel.
Relying on Serrano v. State, 15 So.3d 629 (Fla. 1st DCA 2009), the state argues that even if Calder did make an unequivocal request for counsel, the detective’s statements to Calder did not constitute interrogation within the meaning of Innis, because they were intended only to clarify Calder’s wishes and understanding of his rights before ending the session. However, as the state acknowledges, this view is contrary to our position in Black that Serrano contravenes Miranda’s holding that the police must cease questioning altogether when a defendant makes an unequivocal request for counsel during a custodial interrogation. See Black, 59 So.3d at 346 n. 6; see also Green v. State, 69 So.3d 351, 354 (Fla. 2d DCA 2011) (noting our court’s disagreement with Serrano ). When, as in this case, an officer persists in asking a suspect whether he wishes to give his “side of the story” after the suspect has unequivocally invoked his rights, the officer is not asking harmless clarifying questions; he is violating the suspect’s rights under Miranda. See Cuervo, 967 So.2d at 165.
In any event, it is undisputed in this case that Calder himself initiated communication with the detective after having invoked his right to counsel. Several minutes after the detective left Calder alone in the interrogation room, Calder opened the door and requested to speak with the detective. The question therefore becomes whether, under the totality of the circumstances, Calder’s confession during the second interrogation was voluntary.
Calder argues that the detective’s continued interrogation of him, despite his invocation of the right to counsel, rendered his later confession inadmissible, notwithstanding the fact that he reinitiated contact with the detective. He contends that his decision to resume dialogue with the detective was a product of the detective’s refusal to scrupulously honor his right to counsel by repeatedly urging him to tell his “side of the story.”
The issue before us therefore lies at the intersection of two general constitutional principles. On the one hand, a suspect’s request to cut off questioning until counsel can be obtained must be “scrupulously honored” and all questioning must cease. Miranda, 384 U.S. at 473-74, 86 S.Ct. 1602; Gilbert, 104 So.3d at 1125. On the other hand, “if the accused initiates further conversation, is reminded of his rights, and knowingly and voluntarily waives those rights, any incriminating statements made during this conversation may be properly admitted.” Welch v. State, 992 So.2d 206, 214 (Fla.2008).
*1032 In State v. Hunt, 14 So.3d 1035 (Fla. 2d DCA 2009), the Second District set forth a two-step analysis where a suspect makes statements to the police after invoking his rights:
Where, as here, a suspect has made statements to the police after invoking his right to remain silent, the correct approach to determining whether the police have scrupulously honored the suspect’s right to remain silent may require a two-step analysis. In the first step, courts must decide whether the police continued to interrogate the suspect despite his or her invocation of the right to remain silent. If the police continued the interrogation, then they failed to scrupulously honor the right to remain silent and the resulting statements are inadmissible. Under these circumstances, the court need not proceed to the second step.
On the other hand, if the interrogation ceased, the court must proceed to the second step of the analysis. In the second step, the court must determine who reinitiated the dialogue. The answer to this question determines what factors the court must examine in resolving the issue.
[[Image here]]
[W]here it was the suspect who reini-tiated the dialogue with the authorities, the inquiry is different. Under these circumstances, the courts consider whether the suspect’s decision to change his or her mind and to waive his or her rights by speaking with the authorities was voluntary, knowing, and intelligent.
Id. at 1038-39 (emphasis added). The Hunt opinion, however, does not directly address a situation where the defendant reinitiated dialogue with the police after an earlier interrogation in which the police did not immediately cease questioning when the defendant invoked his rights.
On this issue, we find the Ninth Circuit’s decision in Collazo v. Estelle, 940 F.2d 411 (9th Cir.1991), to provide useful guidance. There, the Ninth Circuit held that the defendant’s confession was involuntary where the defendant asked to talk to a lawyer, the police responded by telling the defendant it “might be worse” for him if he talked to an attorney, and three hours later the defendant “changed his mind” and talked to the police. According to the Ninth Circuit, the substance of the entire transaction demonstrated that the defendant could not be said to “initiate” further conversation with the police as that term is used in Edwards, and that the defendant’s actions in requesting the officers were nothing less than the delayed product of coercive police conduct. Id. at 420, 423.
In a concurring opinion, Judge Kozinski advocated for a bright-line rule where the police badger a suspect after the right to counsel has been invoked:
[T]he police forfeit the benefit of the Edwards exception once they use the type of pressure tactics demonstrated in this record. Because Edwards is designed to prevent police from badgering suspects into giving up their right to counsel, the narrow exception to Edwards cannot apply in a case where the police actually engaged in badgering. If police want to keep the Edwards escape hatch open, they must cease their interrogation as soon as the suspect asserts his right to counsel, and then hope he changes his mind on his own.
Id. at 427 (Kozinski, J., concurring).
Here, we need not decide whether we would adopt the rule suggested by Judge Kozinski. For resolving the present case, it is enough to say that the substance of the entire transaction confirmed that Calder did not voluntarily initiate the further conversation with police, *1033 and that his action in requesting the detective was merely the delayed product of the coercive police conduct. See Collazo, 940 F.2d at 419-24; see also State v. Brown, 592 So.2d 308, 308-09 (Fla. 3d DCA 1991) (holding that the officer’s statements after the defendant invoked his rights were likely to elicit incriminating responses and that the defendant’s confession was not freely and voluntarily made, despite the fact that the defendant reinitiated the conversation); but compare Craig v. State, 599 So.2d 170, 170-71 & n. 2 (Fla. 3d DCA 1992) (even though the police continued questioning the defendant after what was at least an equivocal invocation of the right to counsel, the defendant’s subsequent reinitiation of the interrogation two hours later cured any earlier Fifth Amendment defect where the defendant, who was awaiting transportation to the jail, overheard his co-defendant “throw him in” to the police, the defendant decided for his own best interests to confess his involvement, the police were “totally surprised” by the confession, and there was no indication that the confession arose out of a deliberate stratagem or any form of improper interrogation by the police).
We have considered Stein v. State, 632 So.2d 1361, 1364 (Fla.1994), but find it to be distinguishable. There, Stein was a suspect in a double murder. During an interrogation, Stein asked to speak to an attorney and the questioning was terminated. However, before leaving the room, one of the investigators told Stein that God would forgive him for what he had done. The investigators then left Stein alone in the interview room. Several minutes later, but before Stein had seen an attorney, Stein initiated contact with the investigators by knocking on the door and stating, “I want to talk about part of it.” Id. at 1364. On appeal, the Florida Supreme Court held that the trial court properly denied the motion to suppress the confession, because Stein voluntarily initiated continued communication with the investigators. Id. Although the court noted that the investigator’s comments regarding God were not appropriate, the court emphasized that, at the suppression hearing, Stein himself admitted that the brief conversation about God had no effect on his decision to talk to the investigators. Id. Therefore, in Stein, it was apparent from the record that the officer’s comment did not induce Stein’s reinitiation of the communication.
By contrast, in this case, it cannot be seriously questioned that the officer’s improper comments, after Calder invoked his right to counsel, were designed to induce him to reinitiate the communication without a lawyer. This ploy was successful, bringing Calder to tears and prompting him to ask to speak to the detective only a few minutes after the first interrogation had ended. Although an appellate court must defer to the factual findings surrounding the interrogation, it is not required to defer to the trial court’s conclusions regarding voluntariness. This is a question of law subject to de novo review. Brancaccio v. State, 773 So.2d 582, 583 (Fla. 4th DCA 2000). Here, the totality of the circumstances shows that Calder’s reinitiation of the interrogation and waiver of his previously invoked right to counsel were not voluntary, but instead, the product of improper police conduct.
Based on the foregoing, we find that the trial court erred in denying Calder’s motion to suppress his confession. Because we cannot consider this error to be harmless, we reverse for a new trial.

Reversed and Remanded.

DAMOORGIAN, C.J., and KLINGENSMITH, J„ concur.

. We do not address Calder's argument that the detective minimized his Miranda rights by referring to the form as a "permission slip,” i.e., a paper that would authorize the defendant to speak to him.